William G. Caldes
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300
bcaldes@srkattorneys.com

Justin S. Nematzadeh
NEMATZADEH PLLC
101 Avenue of the Americas, Suite 909
New York, NY 10012
Telephone: (646) 799-6729
jsn@nematlawyers.com

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MASEES SKENDERIAN, FRANK NOVAK, and DANIEL NABAVIAN, on behalf of themselves and all others similarly situated, | CIVIL ACTION NO: 2:23-cv-21251 |
| *Plaintiffs*, | |
| v. | **CLASS ACTION COMPLAINT** |
| DSM-FIRMENICH AG, FIRMENICH INTERNATIONAL SA, FIRMENICH INC., AGILEX FLAVORS & FRAGRANCES, INC., GIVAUDAN SA, GIVAUDAN FRAGRANCES CORP., GIVAUDAN FLAVORS CORP., UNGERER & COMPANY, INC., CUSTOM ESSENCE INC., INTERNATIONAL FLAVORS & FRAGRANCES INC., SYMRISE AG, SYMRISE INC., and SYMRISE US LLC | JURY TRIAL DEMANDED |
| *Defendants*. | |

# TABLE OF CONTENTS

I.      NATURE OF THE ACTION ........................................................................................ 1

II.     JURISDICTION AND VENUE .................................................................................. 6

III.    PARTIES ...................................................................................................................... 8

   A.   Plaintiffs .................................................................................................................. 8

   B.   Defendants ............................................................................................................... 8

IV.     AGENTS AND CO-CONSPIRATORS ..................................................................... 13

V.      FACTUAL ALLEGATIONS .................................................................................... 13

   A.   The Fragrance Market ........................................................................................... 13

   B.   Conspiracy to Allocate Customers and Products, and to Inflate Fragrance Prices ........... 18

      1.   Antitrust Enforcement Authorities in Europe and the United States Are Investigating
           Defendants for Conspiring to Increase the Prices of Fragrances by Allocating
           Customers and Restricting Supply ................................................................. 18

      2.   Defendants' Increased Ability to Reverse-Engineer Their Competitors' Fragrances
           Incentivized and Provided a Motive for the Conspiracy ............................................ 21

      3.   Defendants Conspired to Allocate Their Customers and Inflate the Prices of
           Fragrances and Fragrance Ingredients ....................................................... 24

      4.   Defendants' Conspiracy Resulted in Price Increases ................................................. 28

      5.   Plus Factors Render the Fragrance and Fragrance Ingredients Market Susceptible to
           Precisely the Conspiratorial Conduct Alleged Here .................................... 32

         a.   The Fragrance Industry Has High Barriers to Entry ................................. 32

         b.   The Fragrance Industry is Highly Concentrated and Has Become More
              Concentrated During the Class Period ................................................ 35

         c.   Fragrance Products Are Fungible ....................................................... 38

d.      Demand for Fragrances and Fragrance Ingredients is Inelastic ............................. 39

e.      Defendants Had Numerous Opportunities to Collude Through Trade Associations and Industry Events .............................................................................. 40

f.      Inter-Defendant Sales Provided a Method to Monitor and Enforce the Conspiracy .............................................................................................. 43

C.   The Inflated Prices of Fragrances and Fragrance Ingredients Passed Through to Plaintiffs and the End-Users that They Represent ................................................................. 43

VI.    STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS ..................... 45

A.   Continuing Violation ................................................................................................. 45

B.   Fraudulent Concealment ........................................................................................... 45

VII.   CLASS ACTION ALLEGATIONS ................................................................................. 47

VIII.  CLAIMS FOR RELIEF .................................................................................................. 51

IX.    PRAYER FOR RELIEF ................................................................................................ 107

X.     DEMAND FOR JURY TRIAL ..................................................................................... 109

Plaintiffs Masees Skenderian, Frank Novak, and Daniel Nabavian (together, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Classes" as defined below), file this Class Action Complaint ("Complaint") against Defendants Firmenich SA, Firmenich Incorporated, Agilex Flavors & Fragrance, Inc. (collectively, Firmenich"); Givaudan SA, Givaudan Fragrances Corporation, Givaudan Roure Inc., Ungerer & Company, Inc., Custom Essence Incorporated (collectively, "Givaudan"); Symrise AG and Symrise Inc. (collectively, "Symrise"); and International Flavors & Fragrances, Inc. ("IFF") (collectively, "Defendants"). Plaintiffs and the Classes seek injunctive relief, treble damages, costs, attorneys' fees, and other just relief for Defendants' *per se* violations of Section 1 of the Sherman Act, 15 U.S.C § 1, state antitrust laws, unfair competition laws, consumer protection laws, and unjust enrichment laws of the several States. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on the investigation conducted by their counsel as to all other allegations. Plaintiffs demand a trial by jury.

## I.     NATURE OF THE ACTION

1.      Plaintiffs bring this civil antitrust action seeking treble damages arising out of Defendants' conspiracy to fix, raise, maintain, and stabilize the prices for Fragrances and Fragrance Ingredients as defined below, and allocate and unreasonably restraint trade in the market for Fragrances and Fragrance Ingredients, sold in the United States from January 1, 2018, until such time as the anticompetitive effects of the conduct cease ("Class Period").

2.      Every day, most Americans use innumerable consumer products that contain a mixture of fragrance ingredients combined into a signature scent ("Fragrance") manufactured by Defendants. Fragrances are a necessary component of all consumer products that contain scents, including cosmetics, soaps, shampoos, deodorants, perfumes, laundry detergents, fabric softeners, room fresheners, and personal care products. Those Fragrances (also known as

fragrance compounds) are made up of oils derived from natural products and synthetically created chemicals often derived from petrochemicals (collectively, "Fragrance Ingredients"), among other products like alcohols and coal.

3.      Defendants named in this Complaint are the four largest global manufacturers of flavors and Fragrances, operating in an approximately $26.5 billion worldwide market. The fragrances and fragrance ingredient markets in the United States alone are valued at approximately $8.7 billion. Defendants collectively hold approximately 64% of the global flavors and fragrances market, and between 66-70% of the global fragrances market. They hold substantially similar shares of the respective United States' markets.

4.      Upon information and belief, beginning at least as early as January 1, 2018, Defendants entered into an unlawful agreement in restraint of trade to increase Fragrance prices. Defendants' conspiracy to fix prices for Fragrances was in reaction to increased costs of the raw materials used to manufacture Fragrances. To maintain their profitability, Defendants coordinated with one another to set the price of Fragrances for their customers, divided the consumer market by allocating certain customers to certain Defendants, and imposed supply constraints for Fragrances. Through this unlawful coordination, Defendants charged their customers supra-competitive prices, which were in turn passed through to end-user purchasers of products containing Fragrance and Fragrance Ingredients, including Plaintiffs and the Classes.

5.      Defendants coordinated to implement incremental, contemporaneous price increases during the Class Period, all while experiencing growth in their Fragrance sale volumes and profitability. In a competitive market, rising prices would have caused a decrease in demand; and yet, Defendants continued to increase their profitability (despite additional hurdles caused by the COVID-19 pandemic, supply chain disruptions, and rapid inflation).

6.      In recent years, Defendants have faced a threat to their historic market dominance and high profits: competitors' abilities to cheaply and efficiently reverse-engineer and replicate Defendants' Fragrances. Using increasingly effective technologies, Defendants (and their customers) now have the capability to determine with remarkable accuracy the Fragrance Ingredients included in a Fragrance. So, Defendants cannot be sure that the Fragrances they sell to customers to include in a wide variety of consumer products will remain proprietary; all it takes to decode the Fragrance is running chemical tests on the product that shows the Fragrance Ingredients therein and the volume in which they are used.

7.      Defendants rely on approximately 3,000 of these naturally occurring and synthetic Fragrance Ingredients to make Fragrances for their customers. Different customers (and different Fragrances for the same customers) rely on different subsets of those Fragrance Ingredients—which replicate different scents—for their products.

8.      Except for unique molecules that Defendants have invented ("captives"), Defendants cannot rely on patents or copyright protection to safeguard their proprietary Fragrances. That is because a product is patentable only if it is "useful," not if it is a form of creative expression. But smells (and therefore Fragrances) offer aesthetic value by making consumer products more appealing; they do not meet the standard of utility required for patent production under United States law. Likewise, courts in France have held that Fragrances cannot be copyrighted because they are not "works of intellect" capable of the similar descriptions from the people who perceive them.

9.      The ability to determine the precise Fragrance Ingredient make-up of a given Fragrance poses a major threat to Defendants, whose artificially inflated profits depend on their ability to serve as the only provider for each of their respective Fragrances to their customers.

Those customers include some of the largest consumer products producers in the world, like Procter & Gamble, Unilever, and LVMH.

10.     Rather than combat this threat through competitive means, however, Defendants, beginning at least as early as 2018, entered into an unlawful agreement to fix, raise, stabilize, and maintain the prices of Fragrances and Fragrance Ingredients, in part by allocating customers among themselves and allocating specific Fragrance Ingredients that each of them would produce (and that the others would not produce).

11.     To limit competition in the Fragrance manufacturing market, that is, each Defendant agreed to produce only some of the synthetic and natural Fragrance Ingredients used to make Fragrances. This agreement was not based on manufacturing or sourcing limitations; each Defendant is a large, multinational manufacturer with the capability to make or procure substantially all of the synthetic and natural chemicals used to manufacture Fragrances. And this allocation excludes "captive" chemicals that Defendants invented and are able to patent. Thus, Defendants agreed to produce only a specific segment of Fragrance Ingredients used to make Fragrances in order to restrain competition in the Fragrances market.

12.     Because Defendants produce only some Fragrance Ingredients, they effectively allocate customers because they cannot compete for specific contracts that require Fragrance Ingredients that they do not produce. In other words, if a customer puts out a request for a Fragrance requiring a specific ingredient, only some (or one) of Defendants will be able to produce it and, therefore, only some (or one) of Defendants will compete for that contract. This works to artificially inflate the price of Fragrances because customers are left with fewer (or only one) options to produce their Fragrance. As a result, there is no meaningful price competition for those Fragrances, allowing Defendants to increase their prices above competitive levels.

13.     The conspiracy was effectuated by direct company-to-company contacts among the manufacturers, as well as joint activities undertaken through trade associations such as the International Fragrance Association ("IFRA").

14.     The Fragrance manufacturing industry is susceptible to precisely this type of collusion. Defendants control a huge portion of the Fragrance market in the United States (more than 65%) and the industry is highly consolidated. There are high barriers to entry, preventing new entrants from joining the Fragrance manufacturing market to steal market share from Defendants by undercutting them with competitive pricing. The demand for Fragrances is inelastic—meaning customers are unlikely to switch to substitute products (which do not exist) in the event of a price increase caused by market forces, let alone a collusive price increase. And Defendants have remarkably cozy relationships. They formed a trade association together, which only allows multinational companies engaged primarily in the manufacture of fragrances as regular members. Today, there are seven such members. They have attended industry events together, providing a forum to share competitively sensitive information. These facts illustrate the plausibility that Defendants engaged in the anticompetitive acts described herein.

15.     Defendants' conspiracy to inflate the price of Fragrances by allocating products and customers harmed Plaintiffs and members of the Classes. Plaintiffs and the members of the Classes are the end-user purchasers of products containing Fragrances and Fragrance Ingredients from Defendants. As explained, Defendants are the dominant firms in the Fragrance manufacturing markets and members of the Classes purchased billions of dollars' worth of products containing Fragrances and Fragrance Ingredients manufactured by Defendants. Little did they know, however, that the prices for those products were inflated because Defendants had agreed not to compete. Plaintiffs and members of the Classes are entitled to damages and all

other remedies permitted by law.

## II.    JURISDICTION AND VENUE

16.    Plaintiffs bring this action on behalf of the Nationwide Class (defined below) under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

17.    Plaintiffs also assert claims for actual and exemplary damages and injunctive relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (i) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some defendants; and (ii) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

18.    This Court has personal jurisdiction over each of the Defendants pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, Federal Rule of Civil Procedure 4(h)(1)(A), and the long-arm statute of New Jersey. Defendants Symrise Inc., Firmenich Inc., and Agilex Flavors & Fragrances, Inc. all reside in this District and used their headquarters in Teterboro, Plainsboro, and Piscataway, New Jersey, respectively, to implement and coordinate the restraints of trade described herein. In addition, Defendants: (1) transacted substantial business in the United States, including in this District; (2) transacted with, and caused injury to, members of the Classes located throughout the United States, including in this District; and (3) committed

substantial acts in furtherance of the unlawful scheme in the United States, including in this District. For example:

- Each of the Defendants regularly sold products in the state of New Jersey during the Class Period and continues to sell products in the state of New Jersey;

- In addition to the companies mentioned above that are headquartered in New Jersey, Givaudan Fragrances Corp. runs its operations mainly out of New Jersey and IFF has its principal research and development operations partially in New Jersey;

- Both during the Class Period and through the present, all Defendants or their subsidiaries maintain substantial operations in this District; and

- Both during the Class Period and through the present, all Defendants transacted substantial business in this district, including making significant sales within the District.

19.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c), and (d) because one or more of the Defendants transacted business, was found, and/or resided in this District; a substantial part of the events giving rise to Plaintiffs' claims arose in this District; and a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

20.     Defendants' Fragrances and Fragrance Ingredients at issue in this case are sold in interstate commerce. Defendants' collusive conduct was intended to, and did, cause injury to Plaintiffs and the Classes, who purchased products containing Fragrances or Fragrance Ingredients manufactured and sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants. Defendants expressly aimed their conspiracy at the U.S. marketplace, and their collusive conduct has resulted in an adverse effect on purchasers of products containing Fragrances and Fragrance Ingredients in each state identified in this Complaint.

### III.   PARTIES

**A.   Plaintiffs**

21.    Plaintiff Masees Skenderian is a citizen of California. During the Class Period, he purchased in California products containing Fragrances manufactured or sold by at least one Defendant, and he suffered injury as a result of the unlawful conduct alleged herein.

22.    Plaintiff Frank Novak is a citizen of Michigan. During the Class Period, he purchased in Michigan products containing Fragrances manufactured or sold by at least one Defendant, and he suffered injury as a result of the unlawful conduct alleged herein.

23.    Plaintiff Daniel Nabavian is a citizen of New York. During the Class Period, he purchased in New York products containing Fragrances manufactured or sold by at least one Defendant, and he suffered injury as a result of the unlawful conduct alleged herein.

**B.   Defendants**

24.    Defendant DSM-Firmenich AG is a Swiss corporation that recently formed out of a merger between Firmenich International S.A. and DSM Group. DSM-Firmenich AG manufactures and sells Fragrances and Fragrance Ingredients. DSM-Firmenich AG has headquarters in Kaiseraugst, Switzerland and Maastricht, Netherlands and is a publicly traded company. Directly or through its wholly-owned and controlled subsidiaries, DSM-Firmenich AG has significant operations throughout the United States and manufactured and/or sold Fragrances and Fragrance Ingredients to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries.

25.    Defendant Firmenich International SA is a Swiss corporation that sells Fragrances and Fragrance Ingredients. Firmenich International SA is headquartered in Satigny, Switzerland. Prior to its merger with DSM Group, Firmenich International SA operated throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates.

During the Class Period, Firmenich International SA manufactured, sold, and/or imported Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries.

26.     Defendant Firmenich Inc. is a United States subsidiary of DSM-Firmenich AG, incorporated in Delaware with its principal place of business and headquarters in Plainsboro, New Jersey. During the Class Period, Firmenich Inc. manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. During the Class Period, DSM-Firmenich AG and Firmenich International S.A. controlled, dictated, and encouraged Firmenich Inc.'s actions, both generally and with respect to Firmenich Inc.'s conduct and unlawful acts as alleged herein.

27.     Defendant Agilex Flavors & Fragrances, Inc. is a United States subsidiary of DSM- Firmenich AG, incorporated in Delaware with its principal place of business and headquarters in Piscataway, New Jersey. During the Class Period, Agilex manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. During the Class Period, DSM-Firmenich AG and Firmenich International S.A. controlled, dictated, and encouraged Agilex's actions, both generally and with respect to Firmenich Inc.'s conduct and unlawful acts as alleged herein.

28.     DSM-Firmenich AG, Firmenich International SA, Firmenich Inc., and Agilex Flavors & Fragrances, Inc. are collectively referred to throughout the Complaint as Firmenich.

29.     Defendant Givaudan SA is a Swiss corporation that sells Fragrances and Fragrance Ingredients. Givaudan SA is headquartered in Vernier, Switzerland and is a publicly traded company. During the Class Period, Givaudan SA operated throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the

Class Period, Givaudan SA manufactured, sold and/or imported Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries.

30.     Defendant Givaudan Fragrances Corporation is a United States subsidiary of Givaudan SA incorporated in Delaware with its listed headquarters in Cincinnati, Ohio but its principal operations in East Hanover, New Jersey. During the Class Period, Givaudan Fragrances Corp. manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. During the Class Period, Givaudan SA controlled, dictated, and encouraged Givaudan Fragrances Corp.'s actions, both generally and with respect to Givaudan Fragrances Corporation's conduct and unlawful acts as alleged herein.

31.     Defendant Givaudan Flavors Corporation is a United States subsidiary of Givaudan SA incorporated in Delaware with its headquarters in Cincinnati, Ohio and its principal place of business in East Hanover, New Jersey. During the Class Period, Givaudan Flavors Corp. manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. During the Class Period, Givaudan SA controlled, dictated, and encouraged Givaudan Flavor Corp.'s actions, both generally and with respect to Givaudan Flavor Corp.'s conduct and unlawful acts as alleged herein.

32.     Defendant Ungerer & Company, Inc. is a United States subsidiary of Givaudan SA incorporated in Delaware with its principal place of business in Lincoln Park, New Jersey that conducts manufacturing operations in Bethlehem, Pennsylvania. Since 2020 when Givaudan SA acquired Ungerer & Company, Inc., Givaudan SA has controlled, dictated, and encouraged Ungerer & Company Inc.'s actions, both generally and with respect to Ungerer & Company

Inc.'s conduct and unlawful acts as alleged herein. During the Class Period, Ungerer & Company Inc. manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries.

33.     Defendant Custom Essence Inc. is a United States subsidiary of Givaudan SA incorporated in New Jersey with its principal place of business in Somerset, New Jersey. During the Class Period, Custom Essence manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. Since 2021 when Givaudan SA acquired Custom Essence, Givaudan SA has controlled, dictated, and encouraged Custom Essence's actions, both generally and with respect to Custom Essence's conduct and unlawful acts as alleged herein.

34.     Givaudan SA, Givaudan Fragrances Corporation, Givaudan Flavors Corporation, Ungerer & Company, Inc., and Custom Essence Inc. are collectively referred to throughout the Complaint as Givaudan.

35.     Defendant International Flavors & Fragrances, Inc. ("IFF") is a New York corporation that sells Fragrances and Fragrance Ingredients. IFF is headquartered in New York, New York and is a publicly traded company. During the Class Period, IFF manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries.

36.     Defendant Symrise AG is a German corporation that sells Fragrances and Fragrance Ingredients. Symrise AG is headquartered in Holzminden, Germany. During the Class Period, Symrise AG operated throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period Symrise AG manufactured, sold, and/or imported Fragrances and Fragrance Ingredients to purchasers in the

United States, directly and through predecessors, affiliates, and subsidiaries.

37.     Defendant Symrise Inc. is a U.S. subsidiary of Symrise AG incorporated in New Jersey with its headquarters and principal operations in Teterboro, New Jersey. During the Class Period, Symrise Inc. manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. During the Class Period, Symrise AG controlled, dictated, and encouraged Symrise Inc.'s actions, both generally and with respect to Symrise Inc.'s conduct and unlawful acts as alleged herein.

38.     Defendant Symrise US LLC is a United States subsidiary of Symrise AG incorporated in Delaware with its headquarters and principal place of business in Teterboro, New Jersey. During the Class Period, Symrise US LLC manufactured and sold Fragrances and Fragrance Ingredients to purchasers in the United States, directly and through predecessors, affiliates, and subsidiaries. During the Class Period, Symrise AG controlled, dictated, and encouraged Symrise US LLC's actions, both generally and with respect to Symrise US LLC's conduct and unlawful acts as alleged herein.

39.     Symrise AG, Symrise Inc., and Symrise US LLC are collectively referred to throughout the Complaint as Symrise.

40.     During the Class Period, each of the Defendants sold Fragrances in this District and throughout the United States.

41.     Each Defendant participated in the conspiracy to artificially inflate the price of Fragrances and committed overt acts in furtherance of this conspiracy as alleged herein in this District and the United States.

42.     The term "Defendants" as used in this Complaint refers to and encompasses each Defendant and its successors, parent companies, subsidiaries, affiliates, employees, agents,

officers, and directors.

## IV.     AGENTS AND CO-CONSPIRATORS

43.     Additional persons and entities not named as Defendants in this Complaint have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy to fix and increase the price of Fragrances and Fragrance Ingredients by, *inter alia*, allocating Fragrances and Fragrance Ingredients among each other and/or allocating customers among each other, as alleged herein.

44.     Defendants are jointly and severally liable for the acts of the co-conspirators whether or not named as defendants in this Complaint.

45.     Each Defendant and co-conspirator acted as the agent or joint-venturer of, or for, the other Defendants and co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

## V.     FACTUAL ALLEGATIONS

### A.     The Fragrance Market

46.     The scent of a product is a significant factor in influencing a consumer's choice. For some products—including soap, bodywash, shampoo, household cleaners, candles, laundry detergent, and perfume—scent may be the primary consideration informing a consumer's purchase. Plaintiffs and members of the Classes purchased consumer goods which contain Fragrances or Fragrance Ingredients manufactured by Defendants.

47.     A product's scent helps establish customer preferences by developing a positive and familiar olfactory response to the product. Smells are also linked to a product's functional use; for example, consumers may associate lemon or other citrus scents with cleanliness or mint with freshness. Scents can also convey status; the smell of leather may signify luxury or richness. Research shows that most consumers "consider scent an essential and necessary component of

everyday household products."[1] Indeed, the CEO of IFF's Scent division, Nicolas Mirzayantz, stated that "scent continues to be the #1 attribute driving purchase intent and even more importantly, the purchase repeat factor."[2]

48.     Consumer goods get their scents from chemical compounds known as "Fragrances," which are additives that have a smell. Fragrances provide a pleasant scent to goods that improve the experience of the end user that can evoke function, status, or an emotional response (in addition to masking an underlying unpleasant smell of the product). As such, the addition of these Fragrances to goods drives sales for these products—products purchased by Plaintiffs and other members of the Classes.

49.     Defendants control not only those Fragrance Ingredients but the manufacturing of the Fragrances as well. Manufacturers of consumer goods generally do not make their own Fragrances; rather, they purchase Fragrances from manufacturers, including Defendants. To design and manufacture the Fragrances sold to consumer goods manufacturers, Defendants create unique, proprietary combinations of these natural and/or synthetic compounds and ingredients, including essential oils, extracts, resins, and chemicals.[3] Generally, it is these unique Fragrances which Defendants then sell to consumer goods manufacturers to be incorporated into candles, soap, shampoo, dish soap, detergents, cosmetics, perfumes, cleaning products, and other consumer products.

50.     As part of managing the supply chain for Fragrances they make for their

---

[1] Rachel S. Herz, et al., "A three-factor benefits framework for understanding consumer preference for scented household products: psychological interactions and implications for future development", https://cognitiveresearchjournal.springeropen.com/articles/10.1186/s41235-022- 00378-6 (April 1, 2022).

[2] International Flavor & Fragrances Inc. "Scent Learning Lab," Edited Transcript of conference call or presentation from April 5, 2021.

[3] Up Front Cosmetics, "Synthetic Fragrances" (May 14, 2020), https://upfrontcosmetics.ca/blogs/be-upfront/synthetic-fragrances.

customers, manufacturers such as Defendants collect and create the Fragrance Ingredients they need. This is a large undertaking. As Symrise explained in one investor presentation, it alone manages 10,000 raw materials for about 35,000 products.[4] In managing and producing these raw materials, Defendants are highly reliant on synthetic chemical ingredients. As one Firmenich employee put it, modern perfumery would "[a]bsolutely not" exist today but for synthetic Fragrance Ingredients.[5] The same goes for the non-perfume Fragrances that make up the bulk of the Fragrance market and which are added to innumerable consumer goods. As Givaudan explains, Fragrance Ingredients—"both natural and chemical"—are the "building blocks" of all products containing Fragrances, from fine Fragrances to "much-loved consumer products."[6] Synthetic chemicals that Defendants purchase or manufacture to make their Fragrances are the backbone of the Fragrance industry.

51.    To initiate the process of formulating a Fragrance, a customer generally will submit a request to a manufacturer like Defendants to create a scent. The manufacturer will then work to create the scent, marshalling the Fragrance Ingredients it controls while receiving feedback from and collaborating with the customer. When the scent is finalized, it becomes exclusive and is reserved for that customer—*i.e.*, it cannot be used as a Fragrance for another customer. Manufacturers will sometimes create a new Fragrance on their own and then pitch that Fragrance to customers.

52.    As a result, Defendants sit at a critical point in the supply chain: they collect,

---

[4] Symrise, "Our Integrated Corporate Strategy" (visited on August 18, 2023), https://symrise.com/corporatereport/2022/en/company/our-integrated-corporate-strategy.html#:~:text=The%20Symrise%20business%20model%20is,inspiration%20and%20innovation%20for%20us.

[5] Richard Goller, "Frank Voelkl Interview: In Praise of Synthetics" (July 10, 2020) https://fragroom.com/2020/07/10/frank-voelkl-interview/.

[6] Givaudan, "Ingredients" (visited on August 18, 2023), https://www.givaudan.com/fragrance-beauty/ingredients.

manufacture, and process Fragrance Ingredients—including the synthetic ingredients that they largely manufacture alone—and thus control access to those ingredients. Those ingredients are critical to producing the Fragrances that are a core component of so many consumer products. Put differently, Defendants control some of the central ingredients in the consumer products purchased by Plaintiffs and the Classes.

53.     In 2022, the global Fragrance Ingredients market size reached $9.1 billion; it is expected to reach $12.9 billion by 2028.[7]

54.     While Defendants guard their proprietary Fragrances, many of their offerings are substantially alike. This fact increases the pressure on Defendants to price their Fragrances at lower prices to compete for marginal market gains; indeed, IFF's 2021 annual report specifically listed this pressure as a "Risk Factor": "Our ability to price our products competitively to timely reflect higher input costs is critical to maintain and grow our sales…Increasing our prices to our customers could result in long-term sales declines or loss of market share if our customers find alternative suppliers or choose to reformulate their consumer products to rely less on our products."[8]

55.     Because nearly all consumer products contain Fragrances (even "fragrance-free" products often contain a small amount of Fragrance to mask unpleasant smells of ingredients) and Fragrance has such a significant effect on consumer choice, Fragrance purchasers are relatively insensitive to price increases. These conditions—overlapping products and comparatively static demand regardless of price—facilitate collusion.

---

[7] IMARC Group, REPORT: FRAGRANCE INGREDIENTS MARKET: GLOBAL INDUSTRY TRENDS, SHARE, SIZE, GROWTH, OPPORTUNITY AND FORECAST 2023-2028 (January 2023), https://www.researchandmarkets.com/reports/5732797/fragrance-ingredients-.com/reports/5732797/fragrance-ingredients- market-global-industry.

[8] SEC, International Flavors & Fragrances 2021 Form 10-k, at 14, https://www.sec.gov/Archives/edgar/data/51253/000005125322000007/iff- 20211231.htm.

56.     Defendants are far and away the four largest producers of Fragrances and Fragrance Ingredients in the world. Defendants collectively produce at least 63% of Fragrances in the United States, which is an approximately $8.7 billion market.[9]

57.     Those Fragrances are critical to consumer products producers: they are the scent nearly every consumer will recognize as part of their laundry detergent, hair gel, perfume, soaps, shampoo, and deodorant, to name a few. Indeed, the vast majority of Fragrances are used in products that are cosmetics or toiletries, soaps or detergents, household cleaners or air fresheners, and fine Fragrances.

58.     Defendants' customers are similarly vast and include a wide array of consumer products producers—from the largest cosmetics, personal products, and perfumeries in the world to candle manufacturer suppliers. Those large customers, to name a few examples, include Procter & Gamble, Unilever, LVMH, and Estee Lauder. As IFF has explained, Defendants serve a "large variety of end markets" and their products "can be found in thousands"—likely hundreds of thousands—"of consumer products around the world."[10]

59.     On occasion, Defendants also sell Fragrance Ingredients directly to customers who create their own Fragrances.

60.     Defendants produce Fragrance Ingredients and Fragrances all over the world. The Fragrances and Fragrance Ingredients sold by Defendants and their subsidiaries and co-conspirators during the Class Period were imported into, and sold in, the United States, either as a component of consumer products or to be incorporated into consumer products in the United

---

[9] Ludwig Burger & John Stonestreet, "Givaudan, Symrise, DSM Shares Drop on Global Fragrance Cartel Probe" (March 8, 2023) https://www.investing.com/news/economy/swiss-antitrust-agency-names-four-firms-in-fragrance-cartel-probe-3024662.

[10] IFF, "The Industries and End Markets We Serve" (visited on August 18, 2023), https://www.iff.com/portfolio/markets.

States for sale to end-users, including Plaintiffs.

61.     In addition, a substantial amount of Fragrance production occurs in the United States, with much of the manufacturing occurring in New Jersey.

62.     Defendants' conspiracy and wrongdoing described herein harmed persons in the United States who purchased consumer products in the United States which contained Fragrances or Fragrance Ingredients manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any coconspirator of Defendants.

63.     Each Defendant does substantial business in the United States. In fact, IFF generates approximately 30% of its sales in the United States,[11] and each Defendant generates at least 20% of its revenue from sales in North America.[12]

**B.    Conspiracy to Allocate Customers and Products, and to Inflate Fragrance Prices**

    **1.    Antitrust Enforcement Authorities in Europe and the United States Are Investigating Defendants for Conspiring to Increase the Prices of Fragrances by Allocating Customers and Restricting Supply**

64.     At dawn on March 7, 2023, the European Commission ("EC") carried out "unannounced inspections"—raids—on the facilities of several Fragrance manufacturers and a Fragrance industry association. In an announcement later that day, the EC explained that it conducted the raids because of "concerns that companies and an association in the Fragrance

---

[11] IFF, "Annual Report 2022" (last visited on September 2, 2023), https://ir.iff.com/static-files/6fe53949-936d-4c9c-aa9e-009fee9d35df at 22.

[12] Symrise, "Financial Report 2022" (last visited on September 2, 2023), https://www.symrise.com/investors/financial-results/index.php/?eID=tx_securedownloads&p=74&u=0&g=0&t=1693849338&hash=1e0c4207d491451369566d48ae39fb2941d10114&file=/fileadmin/symrise/Downloads_reports/reports/documents/2023/230308-Symrise-Financial-Report-2022.pdf at 5; Givaudan, "Integrated Annual Report 2022" (last visited on September 2, 2023) at 91; Firmenich, "Financial Statements 2023" (last visited on September 2, 2023), https://www.dsm-firmenich.com/content/dam/dsm-firmenich/corporate/documents/firmenich-sa-annual-report-fy2023.pdf at 47.

industry worldwide may have violated EU antitrust rules that prohibit cartels."[13] The EC carried

out the raids in consultation with the United States Department of Justice ("DOJ"), the United

Kingdom Competition and Markets Authority ("CMA"), and the Swiss Competition Commission

("COMCO"). The EC, CMA, DOJ, and COMCO are now investigating anticompetitive conduct

in the Fragrance and Fragrance Ingredients market.[14]

      65.     On the day of the raids, the CMA announced that the Defendants named herein—

Firmenich, Givaudan, IFF, and Symrise—were the subjects of its investigation. It explained that

it had "reason to suspect anti-competitive behaviour has taken place involving suppliers of

fragrances and fragrance ingredients for use in the manufacture of consumers products."[15] It

further noted that its investigation had proceeded in consultation with several competition

authorities in different jurisdictions, including the DOJ.

      66.     COMCO released a similar statement the same day, providing additional insight

into the investigation. COMCO again confirmed that the Defendants named herein were the

subjects of the investigation and that it had conducted "[d]awn raids" at various locations.

COMCO then explained the substantive motivations behind the investigation: It had "suspicions"

that Defendants have "coordinated their pricing policy, *prohibited their competitors from*

*supplying certain customers and limited the production of certain fragrances*."[16] (emphasis

added). News reports that week similarly confirmed that the companies were "accused of

---

[13] European Commission Press Release, "Antitrust: Commission Confirms Unannounced Inspections in the Fragrance Sector" (March 7, 2023), https://ec.europa.eu/commission/presscorner/detail/en/ip_23_1532.

[14] Competition and Markets Authority, "CMA Launches Investigation into Fragrances and Fragrance Ingredients" (last updated March 8, 2023), https://www.gov.uk/government/news/cma-launches-investigation-into-fragrances-and-fragrance-ingredients.

[15] *Id.*

[16] The Federal Council, "COMCO Investigates Possible Collusions in the Fragrance Market" (March 8, 2023), https://www.admin.ch/gov/en/start/documentation/media-releases.msg-id-93502.html.

coordinating their pricing policies to create bigger prices margins and preventing other Fragrance companies from working with certain customers."

67.     Since the raids, Firmenich, Givaudan, IFF, and Symrise have all confirmed that they are the subjects of the investigation. And Firmenich confirmed that its offices were subject to the EC's dawn raids, explaining that "unannounced inspections were carried out at its offices in France, Switzerland and the UK."[17]

68.     On the same day as the raids, IFF—the only Defendant parent company that is incorporated in the United States—was served with a grand jury subpoena by the Antitrust Division of the DOJ.

69.     That IFF received a subpoena authorized by a criminal grand jury indicates that the DOJ is considering bringing criminal charges against IFF and its co-conspirators. The DOJ's Antitrust Division Manual explains that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution."[18] As a result, federal district courts have explained that, at the motion to dismiss stage, the fact of a criminal government investigation into conspiratorial conduct that violates the antitrust laws carries weight because it shows that "at least several individuals within the governmental chain of command thought certain facts warranted further inquiry into a potential criminal conspiracy."[19]

---

[17] Firmenich, "Firmenich Confirms Anti-trust Probes into Fragrances Sector" (March 8, 2023), https://www.firmenich.com/company/press-release/firmenich-confirms-anti-trust-probes-fragrances-sector#:~:text=Firmenich%2C%20the%20world's%20largest%20privately,France%2C%20Switzerland%20and%20the%20UK.

[18] *In re Packaged Seafood Prods. Litig.*, No. 15-MD-2670, 2017 WL 35571, at *8 (S.D. Cal. Jan. 3, 2017) (quoting U.S. DEP'T OF JUSTICE, ANTITRUST DIV. MANUAL § F.1 (5th ed. Apr. 2015)).

[19] *Id.*

2.      **Defendants' Increased Ability to Reverse-Engineer Their Competitors' Fragrances Incentivized and Provided a Motive for the Conspiracy**

70.      Unlike other industries, Fragrance and Fragrance Ingredient manufacturers largely do not rely on patents or copyright to prevent other companies from using their intellectual property. This has led one legal commentator to explain that patents "are of limited efficacy to Fragrance manufacturers, effectively protecting only newly discovered 'captive' molecules."[20]

71.      As a result, it is entirely legal for competing Fragrance and Fragrance Ingredient manufacturers to reverse engineer the Fragrances of their competitors and sell those Fragrances to customers, so long as they do not use impermissible means to acquire trade secrets. Reverse-engineering a Fragrance—that is, using a chemical test to determine the ingredients and relative volume of each ingredient in a Fragrance—does not violate laws protecting trade secrets.

72.      Thus, Fragrance manufacturers like Defendants can use reverse-engineering tests to determine the make-up of their competitors' Fragrances. In theory, this would allow them to replicate those Fragrances and compete for customers that want to use those Fragrances. This should have been particularly true in the last few decades because, during that time, Defendants have increased their capability to reverse-engineer Fragrances as the technology to do so has become cheaper and more effective. Reverse-engineering a Fragrance involves determining what Fragrance Ingredients and chemicals are used to make up the Fragrance, and in what volume.

73.      Defendants increasingly use gas chromatography-mass spectrometry ("GC-MS") technologies to determine what natural and chemical ingredients are included in their so-called competitors' Fragrances. GC-MS technologies allow Fragrance manufacturers to determine with "remarkable accuracy" the formula of any Fragrance, including those created by their so-called

---

[20] Charles Cronin, *Lost and Found: Intellectual Property of the Fragrance Industry; From Trade Secret to Trade Dress*, 5 N.Y.U. J. Intellectual Prop. & Ent. L. 256 (2015).

competitors. To do so, GC-MS technologies separate the components of a vapor and identify the separated molecules within that vapor, including their relative volumes. This process allows Fragrance manufacturers to obtain any Fragrance's formula "swiftly and inexpensively."

74.     Indeed, Defendants themselves recognize their ability to reverse-engineer their competitors' Fragrances. For instance, in 2014, Givaudan went to trial against a former employee, alleging he had stolen trade secrets related to its Fragrances by downloading them and taking them to his new job at a non-Defendant competitor.[21] One of Givaudan's main complaints was that this process allowed its competitor to avoid going through the process of reverse-engineering its Fragrances because it relied on its new employee to provide them. In other words, Givaudan *acknowledged* its competitors' abilities to reverse-engineer its Fragrances. Indeed, Defendants often use GC-MS technologies on their own Fragrances to make sure that they are meeting their specifications. It follows that they could do the same with their competitors' products.

75.     Large manufacturers like Defendants have greater capacity to engage in this type of reverse-engineering than smaller competitors, in part because of their size, sophistication, and resources. In other words, while Defendants largely have the ability to reverse-engineer their competitors' Fragrance compounds if they so desire, smaller Fragrance manufacturers do not.

76.     This ability to reverse-engineer competitors' Fragrances created a problem for Defendants: Defendants are less able to rely on their proprietary Fragrance compounds to maintain customers because a competitor can copy that Fragrance compound and compete on price. Defendants have long protected their Fragrances as trade secrets. In addition, Defendants

---

[21] *See., e.g.*, 639 F. App'x 840 (3d Cir. 2016) (affirming the summary judgment decisions and jury verdict); Orrick Trade Secrets Watch, "Stop and Smell the Trade Secrets" (March 21, 2014), https://blogs.orrick.com/trade-secrets-watch/2014/03/21/stop-and-smell-the-trade-secrets/ (discussing the 2014 verdict).

maintained their size and stature in the Fragrance industry through long-standing relationships with their customers based on their sole proprietorship over a given Fragrance. But the increased ability to reverse-engineer those Fragrances threatens that status quo: large manufacturers like Defendants can now reverse-engineer their competitors' Fragrances and offer those Fragrances to their competitors' customers at lower prices, including prices that reflect that they did not have to undergo significant R&D expenditures (except to reverse-engineer the products).

77.     In fact, Firmenich concluded as much in a case study it published with the supply chain planning company Adexa, which stated that mass chromatography and mass spectrometry "has threatened, if not eliminated, proprietary secrets" in the Fragrance and flavor industry.[22]

78.     Indeed, in a competitive market, access to GC-MS technologies would provide *customers* with an effective tool to negotiate for price decreases. As one legal academic has explained, a client could use its ability to reverse-engineer its Fragrance as a cudgel: unless its manufacturer lowered its prices, that customer could take the Fragrance to another manufacturer to make the Fragrance at a lower cost.

79.     This reality provided Defendants with a significant motive to conspire: Absent an agreement to allocate customers and/or products to restrain price competition, Defendants' ability to copy each other's Fragrances would encourage robust price competition between Defendants to win clients for specific Fragrances, thereby driving down prices for those same Fragrances.

80.     Because Defendants have such high collective market share, a cartel that allocates customers and agrees not to make specific products artificially reduces price competition. It

---

[22] Vincent Keller & Randy Burgess, "Case Study: The Flavor and Fragrance of Success" (2021) at 2, available at https://www.adexa.com/wp-content/uploads/2021/10/Case-Study_-Firmenich_Final.pdf.

therefore ensures that Defendants can sell their Fragrances and Fragrance Ingredients at artificially elevated prices.

**3.      Defendants Conspired to Allocate Their Customers and Inflate the Prices of Fragrances and Fragrance Ingredients**

81.     Instead of engaging in competitive behavior to address this reverse-engineering threat, Defendants entered into an agreement to allocate customers in the Fragrances and Fragrance Ingredients market to fix, inflate, maintain, or stabilize the prices of Fragrances and Fragrance Ingredients. In order to allocate customers, Defendants agreed to each produce only a specific subset of Fragrances and Fragrance Ingredients and not to produce other Fragrances and Fragrance Ingredients produced by their competitors. By doing so, Defendants ensured that when customers wanted to make a Fragrance requiring a specific ingredient, only one or a limited number of Defendants would be able to do so. This greatly restrained competition in the Fragrance industry and allowed Defendants to increase prices above the levels that would otherwise have been set by a competitive market.

82.     By reaching this agreement, Defendants were able to nullify the competitive effects of Defendants' ability to reverse-engineer each other's Fragrances. So long as Defendants maintained a significant amount of non-overlapping Fragrance Ingredients, it would not matter if they could reverse-engineer each other's Fragrances because they would not have the ingredients to make those Fragrances. By agreeing not to produce certain Fragrance Ingredients, that is, Defendants restrained their ability to compete with each other by offering lower prices on specific Fragrances.

83.     Defendants reached this agreement, in part, so that each could maintain higher profits. This agreement was sufficient to keep price competition at bay because smaller manufacturers are less able to reverse-engineer Fragrances than large manufacturers like

Defendants and generally less able to compete for Defendants' customers for reasons such as high barriers to entry, addressed below. And even if some smaller manufacturers have the capacity to reverse-engineer, because they cannot make as wide a variety of ingredients, they will nevertheless often have to ultimately buy the basic chemical ingredients from Defendants.

84.     The plausibility of Defendants' conspiracy has been confirmed by scholars who have studied the Fragrance industry. As one scholar wrote in 2016, "Five multinational corporations, four of which originated in Western Europe, dominate the world fragrance market. ***For years this industrial concentration fostered a tacit agreement among the industry's largest players. Under this informal understanding, the major fragrance houses would not cannibalize each other by manufacturing competing products based on formulas of a competitor acquired through reverse engineering.*** " This author went on to describe this understanding as a "gentleman's agreement,"[23] a term also used by Calice Becker, head of the International Society of Perfumers-Creators (ISPC) and Director of Givaudan's Perfumery School, who has described the industry as characterized by "a sort of gentleman's agreement and unspoken rules."[24]

85.     Similarly, two other scholars have remarked on how the leading Fragrance manufacturers have reached a "***non-appropriation consensus***" when it comes to "olfactory creations" (with one of these scholars making this observation in an obscure, non-publicly available French-language source by no later than 2012) and have described the Fragrance

---

[23] Cronin, *supra* note 20.

[24] Société Internationale des Parfumeurs-Créateurs, "Article by NEZ : Calice Becker: The ultimate goal would be to see perfume design recognised as an intellectual work" (December 18, 2020), https://www.perfumer-creators.com/en/news/article-by-nez-calice-becker-the-ultimate-goal-would-be-to-see-perfume-design-recognised-as-an-intellectual-work-40.

"industry" as "incestuous."[25]

86.     At some point, this tacit agreement became express. Indeed, Defendants' own employees and their co-conspirators have entered into public affirmations of this agreement not to compete. For example, the December 2022 "Perfumery Code of Ethics," authored by a former IFF employee and counting among its signatories current and former employees of Defendants and their co-conspirators, states as its first maxim the following: "We pledge to create or promote original olfactory forms. Borrowed forms shall have their original creators and formula owners named and rewarded. *Plagiarism is not tolerated.*" (emphasis added).[26] Adherents to the Perfumery Code of Conduct have thus mutually and expressly agreed not to compete with one another over their respective Fragrance formulas.

87.     Likewise, the ISPC espouses a similar sentiment on its website: "We all copy and steal like artists – it's part of the creative process to understand how masterpieces are created, but what's crucial is to know what we do with the copies. *Have them on the market the way they are – is plagiarism.*" (emphasis added).[27]

88.     Defendants' agreement is further evidenced by the fact that no Defendant produces anywhere close to the 3,000 Fragrance Ingredients that are used to make Fragrances. For example, Symrise touts itself as the "No. 1 supplier of Fragrance raw materials," but it lists only 207 Fragrance Ingredients on its website. Givaudan lists only 176 Fragrance Ingredients. IFF lists only 255. And Firmenich lists only 206.

89.     Even if these lists exclude certain "captive" molecules that Defendants have

---

[25] Claire Guillemin, LAW & ODEUR: FRAGRANCE PROTECTION IN THE FIELDS OF PERFUMERY AND COSMETICS 25 (1st ed. 2016) (citation omitted).

[26] Perfumery Code of Ethics, available at https://perfumeryethics.org/the-code/ (last visited on September 3, 2023).

[27] Société Internationale des Parfumeurs-Créateurs, "ISPC Speaks at WPC 2022: Three Goals" (September 7, 2022), https://www.perfumer-creators.com/en/news/ispc-speaks-at-wpc-2022-three-goals-71.

created, patented, and kept secret (though they appear to include them as trademarked molecules), that does account for the dearth of Fragrance Ingredients each Defendant manufactures. For instance, Givaudan has explained that it has patented only "150 new molecules and processes in the past 20 years."[28] So failing to list captive ingredients cannot account for the full universe of synthetic and natural Fragrance Ingredients that can be used to make Fragrances.

90.     What is more, Defendants produce *different* Fragrance ingredients among the subset of Fragrance Ingredients that they produce. One could imagine an innocent explanation for Defendants producing only a subset of Fragrance Ingredients being that certain ingredients are more difficult to produce (or used less) and, therefore, all Defendants produce a similar subset of the overall Fragrance Ingredients. But that is not the case. Firmenich, Givaudan, IFF, and Symrise all publish their Fragrance Ingredients online. Excluding the Fragrance Ingredients that Defendants have trademarked, each Defendant produces a substantial number of Fragrance Ingredients that the other Defendants do not. For instance, IFF produces lavonax, khusinil, meth cyclocitrone, and myrcenyl acetate, but neither Givaudan nor Symrise produce any of those ingredients. Similarly, Givaudan produces methyl octyne carbonate, jasmacyclene, and isopropyl quinoline, but neither IFF nor Symrise produce them (even though they both produce isobutyl quinoline, which is chemically similar but distinct from isopropyl quinoline). And Symrise produces formyrcenol, dimethyl myrcetone, and ethyl propionate, yet again neither Givaudan nor IFF produce those ingredients. These are but a few illustrative examples.

91.     Defendants' failure to produce these Fragrance Ingredients is not a result of

---

[28] Givaudan, "Shaping Tomorrow's Signature Fragrances with Science" (last visited on September 3, 2023), https://www.givaudan.com/fragrance-beauty/ingredients/fragrance-molecules.

capacity limitations or capital restrictions. Defendants are the largest Fragrance Ingredient manufacturers in the world and, as they themselves explain, use "cutting-edge chemistry and biotechnology" to develop their synthetic ingredients in order to launch "distinctive, high-performing products." Indeed, Givaudan explains that its research centers "synthesise nearly 2,000 new molecules every year," even though "[o]nly a small number of th[em] end up in [Givaudan's] perfumers' palette." Thus, it is clear that Defendants have the *capability* to produce substantially all of the synthetic and natural Fragrance Ingredients that are used to make Fragrances and would enable them to offer their customers the full array of Fragrance options.

92.     Defendants act against their unilateral economic self-interest by choosing not to produce those ingredients.  This artificially limits their ability to compete with each other for specific customers. This is evidence that Defendants have agreed to allocate those ingredients among each other and, as a result, have agreed not to compete for certain customers (or, at least, have agreed not to compete for certain Fragrances that those customers request that require specific Fragrance Ingredients). This drives prices for Fragrances containing those ingredients (and for the ingredients themselves) above competitive levels.

93.     This explanation also comports with COMCO's statement in the aftermath of the dawn raids that it had reason to believe Defendants had "prohibited their competitors from supply[ing] certain customers and limited the production of certain fragrances." COMCO's announcement is further evidence that Defendants agreed to allocate the market to increase prices above competitive levels.

### 4.     Defendants' Conspiracy Resulted in Price Increases

94.     The success of Defendants' agreement is further evidenced by the series of price increases they enacted beginning in 2018. Those price increases continued through at least 2022, and included all of the Defendants, generating increasing revenues and profit margins.

-28-

95.     Defendants' price increases were against their economic self-interest. Fragrance Ingredients are commodity products. In other words, a specific Fragrance Ingredient produced by one Defendant has the same value and properties as a Fragrance Ingredient produced by another Defendant. As Symrise explains on its website, "Most of the fragrance ingredients we sell to our customers in our formulations are commodity products. The components are no secret. Anyone could use them and purchase the compounds on the market or even produce them themselves[.]"

96.     Therefore, absent a cartel, if any manufacturer increased the price of a Fragrance Ingredient (or of a Fragrance that is a combination of Fragrance Ingredients), it would be expected that its competitors would not increase their prices but would seek to sell more Fragrances to the first manufacturer's customers to steal market share from their competitor, so long as they were producing goods above marginal cost. Accordingly, it would not be in any manufacturer's unilateral self-interest to increase the price of the Fragrances it sold unless it had an agreement with the other manufacturers that they would do the same or knew they could not because they had agreed not to produce competing products or to sell those products to each other's customers.

97.     In fact, Defendants have recognized as much. For example, IFF stated in its 10-K that "[i]ncreasing our prices to our customers could result in long-term sales declines or loss of market share if our customers find alternative suppliers or choose to reformulate their consumer products to rely less on our products."[29]

98.     Defendants were confident that their price increases would not backfire, however, because their conspiracy had limited their customers' ability to shop around for a better price.

99.     Defendants made public statements through press releases and reports that

---

[29] IFF, "Annual Report 2021" at 15, https://ir.iff.com/static-files/25f3efa3-3f10-46ba-b15a-b606e902f528.

demonstrate a pattern of communications made with the intent of furthering an unlawful conspiracy to fix prices in the Fragrance market. Beginning in 2018, Givaudan reported that "it continues to implement price increases in collaboration with its customers."[30] Other Defendants began to publicly echo these statements in 2018. On August 14, 2018, Symrise gave a press release announcing that "the company is in close dialogue with its customers to actively implement price increases."[31] In the first week of September—only three weeks later—IFF CEO Andreas Fibig announced that their "teams are out there and increasing prices as much as they can."[32] The next month Givaudan repeated its refrain of price increase in collaboration with customers.[33] IFF again references its efforts to change prices on November 5, 2018, stating that "[p]erformance was broad-based – led by new wins and pricing."[34] Two days later, on November 7, 2018, Symrise reported in a press release that it anticipated further price adjustments in collaboration with its customers and the need to "pass-on price increases."[35]

100.    Defendants continued to raise prices, often in parallel, over coming years. Givaudan continued to report price increases in 2019.[36] Likewise, Symrise repeatedly reported

---

[30] Givaudan, "2017 First Quarter Sales: Good start to the year" (April 11, 2017), https://www.givaudan.com/media/media-releases/2017/2017-first-quarter-sales.

[31] Symrise, "Strong organic growth of 9.0% in the first half of 2018" (August 14, 2018)), https://www.symrise.com/newsroom/article/strong-organic-growth-of-90-in-the- first-half-of-2018/.

[32] International Flavor & Fragrances Inc. at Barclays Global Consumer Staples Conference. Boston. September 18, 2018. (Thomson StreetEvents)- Edited Transcript of International Flavor & Fragrances Inc. presentation Thursday, September 6, 2018 at 3:15:00pm GMT. Defendants at times refer to their Fragrance division as their scent business.

[33] Givaudan, "2018 Nine Month Sales" (Oct. 8, 2018). https://www.givaudan.com/media/media-releases/2018/2018-nine-month-sales (Oct. 8, 2018).

[34] IFF, "IFF Reports Third Quarter 2018 Results," (November 5, 2018), https://ir.iff.com/news-releases/news-release-details/iff-reports-third-quarter-2018-results.

[35] Symrise, "Symrise continues dynamic grown track" (November 7, 2018), https://www.symrise.com/nc/newsroom/article/symrise-continues-dynamic-growth-track/?cHash=019fbfff3860f5d5c505b59672d7ee3b&sword_list%5B0%5D=price&sword_list%5B1%5D=increases.

[36] *See, e.g.,* Givaudan, "2019 First quarter sales" (April 9, 2019), https://www.givaudan.com/media/media-releases/2019/2019-first-quarter-sales; Givaudan, "2019 Nine month sales" (October 10, 2019), https://www.givaudan.com/media/media-releases/2019/2019-nine-month-sales.

price increases in its quarterly press releases throughout 2019.[37] Later examples include IFF's announced price increases on March 17, 2022, affecting Fragrances due to the "significant escalation of raw material."[38] Less than a month later, Givaudan announced it too would "accelerate price increases in the second half of the year…after improving sales growth despite squeezed margins."[39]

101.    Indeed, there is reason to believe that Defendants' purported justification for raising prices—that they need to cover rising input costs—is pretextual. Contrary to Defendants' claims that their price increases have simply covered higher input costs, Defendants gross profits have often *increased* during the Class Period. For example, IFF's gross profits have increased substantially from $356 million in the final quarter of 2017 to $896 million in the final quarter of 2022. Givaudan's profits have similarly increased from $1.12 billion in the final half of 2017 to $1.3 billion in the final half of 2022—including rising to over $1.4 billion in the first halves of 2021 and 2022. In fact, Givaudan's operating *and* gross profit margins have been positive dating all the way back to 2004. Symrise has also stated that it has been "[h]ighly profitable" throughout the last decade and a half, explaining that its earnings before interest, taxes, depreciation, and amortization ("EBITDA") margin have been "between 19% and 22%" from 2006 through 2022. And Symrise's gross profits have increased from 1.224 million pounds in

---

[37] *See, e.g.*, Symrise, "Symrise posts strong growth of 9.3% in the first quarter," (April 30, 2019), https://www.symrise.com/newsroom/article/symrise-posts-strong-growth-of-93nbsp-in-the-first-quarter/; "Symrise with continued sales growth of 7.1%" (October 29, 2019), https://www.symrise.com/newsroom/article/symrise-with-continued-sales-growth-of-71/.

[38] IFF Press Release, "IFF Announces Global Price Increases Across All Divisions" (March 17, 2022), https://ir.iff.com/news-releases/news-release-details/iff-announces- global-price-increases-across-all-divisions.

[39] Silke Kolrowitz, "Givaudan to Accelerate Price Increases as Input Costs Hit Margins, " Reuters, July 21, 2022, https://www.reuters.com/business/retail-consumer/givaudan-confirms-mid-term-targets-works-pass-higher-prices-2022-07-21/#:~:text=Givaudan%20to%20accelerate%20price%20increases%20as%20input%20costs%20hit%20margins,-By%20Silke%20Koltrowitz&text=ZURICH%2C%20July%2021%20(Reuters),sales%20growth%20despite%20squeezed%20margins.

2017 to 1.702 million pounds in 2022.

102.    What is more, Defendants continued announcing price increases even *after* the prices for the raw materials on which they rely stopped inflating. For instance, the Producer Price Index released by the Federal Reserve shows a significant *decrease* in petrochemicals prices in 2020 and in the latter half of 2022. To that end, in November 2022, IFF announced that there were "signs of raw material inflation easing." But Defendants did not stop raising prices during those periods nor blaming those price increases on the need to pass-on price hikes for their raw materials.

103.    As mentioned above, Defendants' consistent price increases over the past five years while profitable should have prompted at least some of them to undercut their competitors by offering substantially similar products at lower prices. But there is no evidence that Defendants did so. And Defendants' consistent price increases coupled with their increased profits illustrate the opposite: that all Defendants consistently increased their prices and faced no repercussions for doing so.

**5.    Plus Factors Render the Fragrance and Fragrance Ingredients Market Susceptible to Precisely the Conspiratorial Conduct Alleged Here**

**a.    The Fragrance Industry Has High Barriers to Entry**

104.    As Defendants themselves acknowledge, the Fragrances and Fragrance Ingredients market is characterized by high barriers to entry. Several components of the market make it difficult for new entrants to enter and compete, thus raising Defendants' incentive to collude because new entrants cannot enter the market and steal customers by offering lowering prices.

105.    First, Defendants often enter into long-term contracts with their customers that involve even longer-term renewals that automatically recur, creating business relationships that

often last decades. This too makes it less likely that customers will shift to a non-cartel competitor if their manufacturer raises Fragrance prices or maintains those prices at artificial levels.

106.    Second, customers' utilization of "core lists" functions as another barrier to entry. Generally, manufacturers of end-user products develop a core list of preselected suppliers to whom they will give exclusive access to new product briefings and bidding opportunities. These lists are updated every three to four years. Therefore, it is crucial for a Fragrance supplier to be included on a client's core list to even be in the running for that client's contract, and Defendants have recognized as much.[40] Accordingly, Symrise has explicitly identified core lists as an industry barrier to entry.[41]

107.    Moreover, both Symrise and IFF have acknowledged that multinational customers tend to limit their core lists to the same small subset of major Fragrance suppliers. Consequently, smaller suppliers are often unable to compete for placement on core supplier lists, in turn severely impeding their ability to compete within the Fragrance industry. Morningstar described the four top flavor and fragrance companies as enjoying a moat supported by their inclusion on core supplier lists as "a valuable intangible asset that helps moderate competitive threats from smaller peers."[42]

108.    Third, global supply chain and regulatory restraints create additional barriers to entry. Producing Fragrance products is complex, entailing the need to obtain a large number of

---

[40]Symrise, "Annual Report 2008" (last visited on September 3, 2023), https://www.annualreports.com/HostedData/AnnualReportArchive/s/symrise-ag_2008.pdf at 63.

[41] Symrise, "Symrise Investor Presentation" (June 2019), https://www.symrise.com/fileadmin/symrise/Corporate/Investors/Financial_calendar_and_presentations/190611_Symrise_Investor_Presentation_Paris.pdf at 6.

[42] Andrew Lane, "This Moat Passes the Sniff Test" (August 28, 2017), https://ca.finance.yahoo.com/news/moat-passes-sniff-test-110000169.html.

raw materials and manage a complicated supply chain. Obtaining those materials, managing the supply chain, and producing the Fragrance products themselves requires dealing with a large web of regulatory requirements that can be difficult for a new entrant to manage. Large, established players like Defendants are more capable of navigating those complex supply chains and complicated regulatory regimes than new entrants.

109.    Fourth, entering the Fragrance manufacturing industry requires significant capital expenditures on marketing, manufacturing facilities, and research.

110.    Fifth, as explained above, the process for manufacturing Fragrances and Fragrance Ingredients includes sourcing or manufacturing various raw materials (both natural and synthetic), processing those materials into Fragrance Ingredients, and selling those Fragrances to customers. In order to insulate themselves from the need to rely on other supply chains, Defendants have vertically integrated themselves by self-sourcing ingredients for their Fragrances. For instance, when Givaudan acquired Ungerer, it announced that doing so would "enhance [its] industry leadership . . . through vertical integration into key specialty ingredients for our flavour and fragrance creations."[43] IFF has similarly explained that its "business and expertise is vertically integrated," which "allows [it] to lower costs while maintaining the security of supply and the quality, for our perfumers and our customers,"[44] and it has repeatedly stated in its financial statements that it is vertically integrated.[45] And Symrise claims that it has undergone "[i]ndustry- leading backward integration" that involves producing both natural and

---

[43] Givaudan, "Givaudan Completes Acquisition of Ungerer" (February 20, 2020), https://www.givaudan.com/media/media-releases/2020/givaudan-completes-acquisition-ungerer.

[44] IFF, "Pioneering Nature Sustainability at Heart" (last visited on September 3, 2023), http://lmrnaturals.iff.com/en/scent/lmr-naturals/overview.

[45] *See, e.g.,* IFF, "Annual Report 2022" (last visited on September 3, 2023), https://ir.iff.com/static-files/6fe53949-936d-4c9c-aa9e-009fee9d35df at 9.

synthetic Fragrance Ingredients and has led to it being the top supplier of Fragrance raw materials. This vertical integration creates another barrier to entry by allowing Defendants to reduce costs and create economies of scale with which new entrants would be unable to compete.

111.    What is more, Defendants *depend* on these high barriers to entry to keep prices high and increase their profits. For instance, Givaudan stated in an investor presentation that these "high barriers to entry" are a "key feature" in the Fragrances space because it requires mastering a specific level of complexity.[46] And Symrise explained that "[h]igh barriers to entry" because of manufacturers' long-term relationships with clients and "increasing regulatory pressure" are part of what makes the Fragrance market an "attractive niche."[47] Market analysts confirm these high barriers to entry.[48]

> **b.    The Fragrance Industry is Highly Concentrated and Has Become More Concentrated During the Class Period**

112.    The Fragrance and Fragrance Ingredients market is characterized by high levels of concentration, making it particularly susceptible to collusion.

113.    Defendants are the four largest producers of Fragrances and Fragrance Ingredients and collectively hold at least 63% of the global Fragrance market alone. Defendants' global market shares are largely similar to their market shares in the United States.

114.    Defendants themselves have acknowledged that the Fragrance industry is an "attractive niche" in part because of its "[h]igh market concentration." And academics studying the Fragrance industry agree, labeling the market "highly consolidated."

---

[46] Givaudan, "Investor Presentation" (February 2023), https://ir.iff.com/static-files/6fe53949-936d-4c9c-aa9e-009fee9d35df at 7.

[47] Symrise, "Symrise Investor Presentation" (June 2019), https://www.symrise.com/fileadmin/symrise/Corporate/Investors/Financial_calendar_and_presentations/190611_Symrise_Investor_Presentation_Paris.pdf at 6.

[48] Lane, *supra* note 44.

115.     This consolidation has contributed to the anticompetitive behavior described herein, just as economic theory predicts. For instance, one academic explained that the "industrial concentration" has led to an "understanding" that the "major fragrance houses would not cannibalize each other by manufacturing competing products based on formulas of a competitor acquired through reverse engineering."[49]

116.     Moreover, Defendants in recent years have used mergers and acquisitions to further solidify their market shares and concentrate the market. As explained above, DSM and Firmenich recently completed a merger that will make its new entity—DSM-Firmenich AG—the largest maker of Fragrances in the world. The previous companies' combined revenues would exceed $12 billion.

117.     This is but one example of a litany of acquisitions within the Fragrance and Fragrance Ingredients market in recent years that has led to extreme consolidation. Defendants have explained that they have entered into these acquisitions with a particular focus on gaining a stronghold in the United States. In 2014, for example, IFF acquired Aromor Flavors and Fragrances Ltd. (a manufacturer of specialty Fragrance Ingredients) and Symrise acquired Diana Group (a leading manufacturer in natural products) in a large transaction valued at 1.3 billion pounds.

118.     In 2015, IFF acquired Ottens Flavors, a company with a "strong portfolio of key US-based accounts."

119.     In 2016, IFF acquired David Michael & Company, Inc. in an effort to continue to strengthen its North American business.

120.     In 2017, Firmenich acquired Defendant Agilex Flavors & Fragrances, "a leading

---

[49] Cronin, *supra* note 20.

fragrance company in North America serving mid-sized customers." In its press release announcing the acquisition, Firmenich highlighted that Agilex had a track record in designing "creative fragrances" and touted its recently launched manufacturing center in New Jersey.

121.    Acquisitions picked up even more in 2018. That year, Firmenich acquired Flavourome, Natural Flavors, Fragrance West, and Senomyx. In its announcement of its acquisition of Fragrance West, Firmenich explained that Fragrance West had a manufacturing facility in Los Angeles and focused on creative scent design.

122.    In the same year, Givaudan acquired Expressions Parfumées and Naturex. Givaudan explained that Expressions Parfumées was a "pioneer of natural fragrance compounds" and would benefit from Givaudan's "ingredients and sourcing network."

123.    IFF also acquired Frutarom in 2018.

124.    This increasing number of acquisitions continued in 2019. That year, Givaudan acquired five new companies: Golden Frog, Albert Vieille, Fragrance Oils, Drom, and AMSilk GmbH's cosmetic unit. In Givaudan's announcement of its acquisition of Fragrance Oils, it explained that Fragrance Oils was a "leading British-based manufacturer and marketer of innovative specialty Fragrances."

125.    In 2020, Symrise acquired the Fragrance and aroma chemicals business of Sensient Technologies Corporation. This was another merger in the United States' Fragrance and Fragrances Ingredients market, as Sensient is located in Milwaukee, Wisconsin. Symrise announced that the acquisition would allow it to "broaden its leadership position as a supplier of fragrance ingredients," particularly those used in "perfumes, shampoos, soaps, detergents and antiperspirants."

126.    Finally, two major acquisitions occurred in 2021. First, IFF merged with DuPont's

Nutrition & Biosciences business, developing IFF into "a leader in the global consumer goods and commercial products value chain that will redefine our industry." IFF announced that the merger would give the combined companies an estimated 2020 EBITDA of $2.5 billion. Second, Givaudan acquired Defendant Custom Essence as part of a "strategy to expand the capabilities of its fragrance business." Givaudan explained that Custom Essence had a particular stronghold in the United States, which was part of its reason for acquiring the company.

127.    In sum, the Fragrance industry has undergone substantial consolidation in the past nine years, with a particularly high number of acquisitions in recent years during the Class Period. During this time, Defendants have acquired a number of companies with operations focused on the United States, making the Fragrance market in the United States exceptionally concentrated.

128.    This trend is likely to continue. As Credit Suisse recently noted in a market analysis of Symrise, "supply chain dynamics" in the Fragrances market should continue to "favour large Flavour & Fragrances (F&F) companies at the expense of smaller F&F," causing "[f]urther consolidation" and "driv[ing] smaller F&F players out of the market."[50]

### c.    Fragrance Products Are Fungible.

129.    Defendants view Fragrances and Fragrance Ingredients as fungible—or substitutable—increasing the likelihood that Defendants could collude to increase the price of those products.

130.    For instance, in its decision approving Defendant Givaudan's acquisition of another Fragrance manufacturer, the EC explained that there is supply-side substitutability

---

[50] Credit Suisse, "Power Shift to Flavour & Fragrances" (April 5, 2017), https://plus2.credit-suisse.com/content/getsourcedocument?Document_ID=3cH6&format=pdf at 1.

supporting the argument that a single market for Fragrances exists.

131.    To that end, although Defendants have suspiciously chosen not to produce many overlapping Fragrances and Fragrance Ingredients, they each have the capability to produce Fragrances for all necessary applications. And because Fragrance Ingredients are uniform chemical compounds, there is no meaningful difference between a Fragrance Ingredient (or combination of Fragrance Ingredients in the form of a Fragrance) produced by one Defendant as compared to another.

132.    This would have incentivized Defendants to collude. If Fragrance Ingredients were differentiated based on who manufactured them, there would be natural price differences between the ingredients produced by different manufacturers based on their quality, differences, and more. But because, for instance, benzyl propionate (a Fragrance Ingredient) is the same if it is produced by Symrise or Givaudan, Symrise cannot naturally increase the price of its benzyl propionate compared to Givaudan's (benzyl propionate is one of the few ingredients both Symrise and Givaudan use, though IFF does not). As a result, Fragrance manufacturers are more inclined to collude and collectively raise the prices of these undifferentiated products. And in fact, this lack of differentiation illustrates Defendants' desire for the particular form of collusion here. Rather than simply agree to fix the prices of a wide range of Fragrance Ingredients, Defendants recognized they could eliminate the need to compete on the price of those interchangeable ingredients if they instead divvied them up. It no longer matters that a Fragrance Ingredient produced by different manufacturers are interchangeable if only one Defendant makes that ingredient.

### d.    Demand for Fragrances and Fragrance Ingredients is Inelastic

133.    Industries that are characterized by inelastic demand are particularly susceptible to collusion because customers will buy products even in the face of sustained price increases. In

other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase the product despite the price increase. If producers in industries characterized by inelastic demand can increase prices without being undercut by their competitors, they can recognize increased profits.

134.    The Fragrance Industry is characterized by inelastic demand. Because there are no substitute goods for Fragrances and Fragrance Ingredients, customers cannot turn to alternative products in the face of price increases. So, consumer products producers cannot turn to non-fragrance goods for their products in the face of a price increase across all Fragrances and Fragrance Ingredients.

### e.    Defendants Had Numerous Opportunities to Collude Through Trade Associations and Industry Events

135.    Industries in which competitors frequently communicate are susceptible to collusion. This is particularly true when competitors participate in trade associations together because trade association meetings can provide a forum to discuss sensitive information and organize a cartel. Defendants—supposed competitors in the Fragrance and Fragrance Ingredients markets—frequently communicate and participate in trade associations that play a particularly important role in the industry.

136.    Defendants are members of several trade associations, which courts have recognized can provide a forum for and help facilitate collusive behavior. Defendants' involvement in trade associations is of particular importance here because the EC has indicated that there is reason to believe that a trade association facilitated Defendants' conspiratorial behavior. Following its dawn raids, the EC announced its concerns that Defendants "and an association in the fragrance industry" may have violated antitrust laws.

137.    For example, Defendants were able to coordinate and effect this conspiracy in part

through their control of, and constant communications through, the International Fragrance Association ("IFRA"). IFRA is an international trade association representing the "global fragrance industry" with the express "mission to represent the collective interests of the industry and promote the safe use and enjoyment of fragrances around the world." IFRA "brings together seven multinational companies": the four Defendants, Robertet Groupe, Takasago International Corporation, and BASF.

138.    Defendants wield significant power over and through IFRA. Symrise's Chief Sustainability Officer has been the Chair of IFRA since April 2020. For the five years beforehand, Givaudan's Fragrance Division President was the board's Chair. To this day, every Defendant maintains a representative on IFRA's board, and Givaudan's representative is Vice Chair.

139.    IFRA has served as a mechanism to coordinate and facilitate Defendants' conspiracy. In addition to its multi-day Global Fragrance Summit at which Defendants meet and intermingle, IFRA frequently holds other events attended by some or all Defendants that provide an opportunity to converse in private. For instance, each and every Defendant had a representative that attended the most recent IFRA Global Fragrance Summit in person.

140.    Defendants also participate in several other trade associations that could provide forums for their collusive communications. Most importantly, Defendants launched their own North American trade association, Fragrance Science & Advisory Council ("FSAC"), after jointly deciding to leave the then-extant North American trade association, Fragrance-Creators Association ("FCA"). In 2020, Defendants announced that they were leaving the FCA at approximately the same time. Defendants then launched FSAC, in which they were the only members. Reporting at the time explained that FSAC "unites the world's leading fragrance and

flavor companies in an effort to drive science-based public policy in North America." FSAC set

out with the express goal to focus on "business-to-business audiences" in order to "defend[]

fragrance ingredients" against, among other things, criticism from "consumer[s]." To date, FSAC

has added only one non-Defendant member—Bath and Body Works.

141.    However, since the investigation into Defendants began, IFF has left FSAC and

*rejoined* FCA. In the announcement that IFF rejoined FCA, FCA makes no mention of the fact

that IFF once left the trade association and provides no reason for its rejoining. It is reasonable to

infer that IFF recognized that FSAC presented a unique opportunity to collude with its main

competitors with very few other participants and left in an attempt to shield itself from antitrust

liability once it realized it was under scrutiny from antitrust authorities.

142.    Defendants also are all active members of the Research Institute for Fragrance

Materials ("RIFM"). RIFM explains that it is the "leading resource in the world for the safe use

of fragrance ingredients." Defendants all serve on RIFM's Advisory Committee and are the most

prominent members of RIFM's "Core Teams," which "advise and consult on strategic issues

related to RIFM's goals." Thus, Defendants attend meetings of RIFM's Advisory Committee and

Core Teams together, and they exert significant influence over RIFM's activities.

143.    Defendants also had significant opportunities to collude at other industry events,

including those hosted by the American Society of Perfumers. For instance, at the American

Society of Perfumers' golf event, pictures show executives from Firmenich, Givaudan, and IFF

paired in groups together. And pictures from the American Society of Perfumers' Symposium

similarly show Firmenich and IFF executives posing with their arms around each other. These

examples illustrate the coziness of executives from different Fragrance companies as well as the

many opportunities those executives had to collude and share competitively sensitive

information with one another.

   **f.**  **Inter-Defendant Sales Provided a Method to Monitor and Enforce the Conspiracy**

  144. While Defendants largely each produce the Fragrance Ingredients that they use in their respective Fragrances, Defendants also purchase Fragrance Ingredients from each other as necessary to fill customer orders. They also license and sell their "captive" proprietary molecules to each other. As a result, their sales and production staff are in frequent communication, providing a mechanism to organize and maintain a cartel. These inter-defendant sales provide a mechanism to both monitor and enforce the conspiracy.

  145. Indeed, that Defendants rely on each other for materials increases their incentives to collude and provides a mechanism for punishing cartel participants who attempt to cheat on the cartel. That is, Defendants can threaten to withhold the materials that they sell to each other if a specific cartel participant cheats on the agreement. For example, if a Defendant uses a particular ingredient that is required to make a Fragrance for a particular customer, they can agree to sell that ingredient to another Defendant only if the other Defendant agrees not to attempt to poach the first Defendant's customer.

**C.** **The Inflated Prices of Fragrances and Fragrance Ingredients Passed Through to Plaintiffs and the End-Users that They Represent**

  146. Defendants' conspiracy to fix prices of, and allocate market shares for, Fragrances and Fragrance Ingredients harmed Plaintiffs and the Classes because they paid higher prices for products containing Fragrances and Fragrance Ingredients than they would have in the absence of Defendants' conspiracy.

  147. Fragrances and Fragrance Ingredients are critical components of many consumer products. Research has shown that "most contemporary consumers consider scent an essential and necessary component of everyday household products for freshening air, laundry, and

cleaning."[51] As the price of Fragrances and Fragrance Ingredients increases, the cost of consumer products goes up.

148.    When a firm's costs increase due to an overcharge or increasing raw materials costs, the firm will tend to pass-through the cost increase by raising its price. Otherwise, it would lose money on each sale and be driven out of business. Similarly, when a firm's costs decrease, for example due to improved production efficiency or decreasing energy costs, the firm will tend to pass-through the cost decrease by lowering its price. Otherwise, competitors would be able to undercut its prices, taking market share.

149.    Economic theory predicts that pass-through occurs at each stage of the manufacturing and distribution process. When the manufacturer faces an industry-wide, nontransitory increase in the cost of inputs, it increases its prices. Similarly, when the distributor (and all its competitors) pays a higher price for the product, it also increases its prices. This process continues throughout the entire distribution chain.

150.    The purpose of Defendants' conspiratorial conduct was to increase, fix, or maintain the prices of Fragrances and Fragrance Ingredients in the United States, and, as a direct and foreseeable result of the conspiratorial conduct, Plaintiffs and the Classes purchased products containing Fragrances and Fragrance Ingredients at artificially inflated prices during the Class Period.

151.    By reason of the alleged violations of the antitrust laws, Plaintiffs and the Classes have sustained injury, having purchased products containing Fragrances and Fragrance Ingredients for higher prices during the Class Period than they would have paid in the absence of

---

[51] Rachel S. Herz, *et al.*, *A Three-Factor Benefit Framework for Understanding Consumer Preference for Scented Household Products: Psychological Interactions and Implications for Future Development*, April 1, 2022, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8972642/.

Defendants' illegal contract, combination, or conspiracy. As a result, Plaintiffs and the Classes have suffered damages.

152.     This is an injury of the type that the antitrust laws were meant to punish and prevent.

153.     The effects and injuries caused by Defendants' anticompetitive agreement commonly impacted all end-users of products containing Fragrances and Fragrance Ingredients in the United States.

## VI.     STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS

### A.     Continuing Violation

154.     During the Class Period, Defendants' conspiracy was a continuing violation in which Defendants repeatedly invaded Plaintiffs' and members of the Classes interests by adhering to, enforcing, and reaffirming the anticompetitive agreement described herein.

155.     Defendants' continuing adherence to, enforcement of, and reaffirmation of the anticompetitive agreement throughout the Class Period was and is consummated through, among other conspiratorial acts, repeatedly selling to manufacturers of products containing Fragrances and Fragrance Ingredients at artificially inflated prices, communicating with each other to discuss the terms of and continued adherence to the conspiracy, and continually refusing to compete for each other's customers, to ensure sales at artificially inflated rates.

### B.     Fraudulent Concealment

156.     Plaintiffs and other members of the Classes had neither actual nor constructive knowledge of the facts constituting their claim for relief until at least March 7, 2023, when the EC announced its investigation into Defendants' anticompetitive conduct. Plaintiffs and other members of the Classes similarly were not on notice that the DOJ had opened a criminal grand jury investigation into IFF until IFF publicly announced in May 2023 that it had been served

with a grand jury subpoena. Moreover, the scholarly commentary cited herein describing Defendants' anticompetitive conduct was published in obscure academic books and articles, including in foreign languages, and describes only a "tacit," not explicit, agreement among the Defendants. And the public commitments by Defendants not to "plagiarize" one another's work cited herein were made only in 2022. Furthermore, many sources of industry news and information, including many cited in this Complaint, are behind paywalls and thus generally inaccessible to the broader public. Thus, Plaintiffs and other members of the Classes did not and could not have known about Defendants' anticompetitive agreement until shortly before filing this Complaint, or at the very earliest in 2022. Defendants engaged in a secret conspiracy that did not reveal facts that would put Plaintiffs or the Classes on inquiry notice that there was a conspiracy to allocate products and customers and inflate the prices of Fragrances and Fragrance Ingredients in the United States.

157.    Defendants' anticompetitive conspiracy, by its very nature, was self-concealing. Fragrance manufacturers are not exempt from antitrust regulation, and thus, Plaintiffs and the Classes reasonably considered the Fragrance industry to be competitive until recently. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate on the prices paid by manufacturers of products containing Fragrances and Fragrance Ingredients in the United States.

158.    Plaintiffs exercised reasonable diligence. Plaintiffs and the other members of the Classes could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and co-conspirators to conceal their combination.

159.    Throughout the Class Period, Defendants effectively, affirmatively, and

fraudulently concealed their unlawful combination and conspiracy from Plaintiffs and the other members of the Classes.

160.     The combination and conspiracy alleged herein was fraudulently concealed by Defendants by various means and methods, including, but not limited to, Defendants' repeated public statements that they offered competitive prices—e.g., that they offer prices set by competitive forces in the market rather than by the anticompetitive agreement alleged herein. During the Class Period, Defendants affirmatively and falsely represented that they set competitive prices for Fragrances and Fragrance Ingredients. As just one example, Givaudan repeatedly stated in its 2022 Annual Report that it had to avoid certain operational risks that would prevent it from delivering products at "competitive prices"—implying that it otherwise does set its prices for Fragrances and Fragrance Ingredients competitively. Similarly, Givaudan stated in that same report that the Fragrance industry is a "competitive and dynamic environment." And IFF has stated that it aims to create "not only innovative, but also cost-effective [Fragrance] ingredients."

161.     These false representations were used to conceal the conspiracy.

162.     By virtue of Defendants' fraudulent concealment of their wrongful conduct, the running of any statute of limitations has been tolled and suspended with respect to any claims and rights of action that Plaintiffs and the other members of the Classes have as a result of the unlawful combination and conspiracy alleged in this Complaint.

## VII.   CLASS ACTION ALLEGATIONS

163.     Plaintiffs bring this action on behalf of themselves and as a class action under the Federal Rules of Civil Procedure 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

    **Nationwide Class:** All persons and entities in the United States

> who, during the Class Period, purchased consumer products, not for resale, which contained Fragrances or Fragrance Ingredients that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

164.    Plaintiffs also bring this action on behalf of themselves and as a class action under the Federal Rules of Civil Procedure 23(a) and (b)(3), seeking damages pursuant to antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following Class (the "Damages Class"):

> **Damages Class:** All persons or entities who, during the Class Period, in the End-User Purchaser States[52] purchased consumer products, not for resale, which contained Fragrances or Fragrance Ingredients that were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

165.    The Nationwide Class and Damages Class are referred to collectively as the "Classes" and members of both classes are collectively referred to as "Class Members," unless otherwise indicated. The following persons and entities are excluded from the proposed Class: Defendants, co-conspirators, and any of their subsidiaries, predecessors, officers, or directors; federal, state, or local governmental entities; and the court and any of its staff.

166.    The Class definitions provide clear, objective criteria understood by Class Members and Defendants, and it allows the parties to identify the members of the Classes.

167.    Subject to additional information obtained through further investigation and discovery, the Class definitions may be expanded or narrowed.

168.    The Classes are so numerous that joinder of all members of the Classes in this action is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the

---

[52] The End-User Purchaser States are the states listed in the Second and Third Claims for Relief.

proposed Classes contain millions of similarly situated customers.

169.    The Classes are readily identifiable and are ones for which records should exist.

170.    Plaintiffs' claims are typical of those of the Classes. Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the Classes, and the relief sought is common to the Classes.

171.    Plaintiffs and Class Members were injured by the same unlawful conduct, which resulted in them receiving less in value for consumer products containing Fragrances and Fragrance Ingredients (by overpaying for those products) than they would have in a competitive market.

172.    Plaintiffs will fairly and adequately protect and represent the interests of the Classes. The interests of the Plaintiffs are aligned with, and not antagonistic to, the Classes.

173.    Questions of law and fact common to Class Members predominate over questions, if any, that may affect only individual members because Defendants have acted and refused to act on grounds generally applicable to Class Members.

174.    Questions of law and fact common to the Classes include the following, without limitation:

- Whether Defendants engaged in an agreement, combination, or conspiracy to fix, inflate, maintain, or stabilize the prices paid for Fragrances and Fragrance Ingredients;

- Whether Defendants engaged in an agreement, combination, or conspiracy to allocate their customers for Fragrances and Fragrance Ingredients and engaged in an agreement, combination, or conspiracy to allocate those products;

- Whether such agreements constituted violations of the Sherman Antitrust Act;

- Whether such agreements constituted violations of the End-User Purchaser States' unfair competition, consumer protection, and unjust enrichment laws;

- The identity of the participants of the alleged conspiracy;

- The duration of the conspiracy alleged herein, and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

- Whether Defendants fraudulently concealed their misconduct;

- Whether and to what extent Defendants' anticompetitive scheme inflated prices of Fragrances and Fragrance Ingredients above competitive levels;

- The extent that any overcharge was passed through to Plaintiffs and Class Members;

- The nature and scope of injunctive relief necessary to restore competition; and

- The measure of damages suffered by Plaintiffs and the Damages Class.

175.    Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex class action antitrust litigation.

176.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged. Further, individual joinder of all damaged members of the Classes is impractical, and the prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants. Accordingly, the benefits of proceeding through the class mechanism, including providing injured persons with a method of obtaining redress for claims that are not practicable for them to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

177.    Defendants have acted on grounds generally applicable to the Classes, thereby

making final injunctive relief appropriate with respect to the Classes as a whole.

## VIII.   CLAIMS FOR RELIEF

### COUNT 1: VIOLATION OF § 1 OF THE SHERMAN ACT (15 U.S.C. § 1)
### (On Behalf of Plaintiffs and the Nationwide Class for Injunctive and Equitable Relief)

178.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

179.    Defendants are direct competitors in the Fragrance and Fragrance Ingredients market throughout the United States.

180.    Beginning at least as early as January 1, 2018 and continuing through the present, Defendants entered into a continuing contract, combination, and/or conspiracy with respect to the sale of Fragrances in unreasonable restraint of trade and commerce and in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

181.    The contract, combination, and/or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize and/or maintain artificially supra-competitive prices for Fragrances.

182.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

a) Participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Fragrances at certain levels, and otherwise to fix, increase, inflate, maintain, and/or stabilize effective prices for one or more Fragrances or Fragrance Ingredients incorporated into consumer products purchased by Plaintiffs and Nationwide Class Members in the United States;

b) Participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and enforce the unlawful

agreements they reached.

183.    Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices with respect to Fragrances and Fragrance Ingredients.

184.    Defendants' anticompetitive acts described above were knowing, willful, and constitute a per se violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and were an unreasonable and unlawful restraint of trade.

185.    There is no legitimate business justification for, or pro-competitive benefits attributable to, Defendants' conspiracy and overt acts in furtherance thereof. Any proffered business justification or asserted pro-competitive benefits would be pretextual, outweighed by the anticompetitive effects of Defendants' conduct, and could be achieved by means less restrictive than the conspiracy and overt acts alleged herein.

186.    The injury to Plaintiffs and the Nationwide Class is of the type that antitrust laws were designed to prevent and flow directly from Defendants' unlawful conduct.

187.    Plaintiffs and the Nationwide Class are threatened with future injury to their business and property by reason of Defendants' continuing violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

188.    Plaintiffs and Classes are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### COUNT 2: VIOLATION OF THE STATE ANTITRUST STATUTES
#### (On Behalf of Plaintiffs and the Damages Class)

189.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

190.    During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of Fragrances and Fragrance Ingredients in

unreasonable restraint of trade in commerce, in violation of the various state antitrust and
consumer protection statutes set forth below.

191.    Defendants' acts and combinations in furtherance of the conspiracy have caused
unreasonable restraints in the market for Fragrances and Fragrance Ingredients.

192.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated
End Users in the Damages Class who purchased products containing Fragrances or Fragrance
Ingredients have been harmed by being forced to pay artificially-inflated, supra-competitive
prices for products containing Fragrances or Fragrance Ingredients.

193.    By engaging in the foregoing conduct, Defendants intentionally and wrongfully
engaged in a contract, combination, or conspiracy in restraint of trade in violation of the
following state antitrust laws pleaded below.

194.    **Arizona:** Defendants have entered into an unlawful agreement in restraint of
trade in violation of Ariz. Rev. Stat. §§ 44-1402, et seq. with respect to purchases of products
containing Fragrances and Fragrance Ingredients in Arizona by members of the Damages Class
and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the
Damages Class who resided in Arizona at the time of their purchase.

a)    Defendants' combination or conspiracy had the following effects:

(1) Fragrances price competition was restrained, suppressed, and
eliminated throughout Arizona; (2) Fragrance prices were raised, fixed,
maintained and stabilized at artificially high levels throughout
Arizona; (3) members of the Damages Class were deprived of free and
open competition; and (4) members of the Damages Class paid supra-
competitive, artificially inflated prices for products containing

Fragrances or Fragrance Ingredients.

    b)    During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    c)    Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1402, et seq.

195.   **California:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. And Prof. Code, §§ 16720, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in California by Plaintiff Masees Skenderian and members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by Plaintiff Masees Skenderian and members of the Damages Class who resided in California at the time of their purchases.

    a)    During the Class Period, Defendants entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of Fragrances at supra-competitive levels.

    b)    The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful

trust and concert of action among the Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Fragrances.

c)    For the purpose of forming and effectuating the unlawful trust, the Defendants have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above including fixing, raising, stabilizing, and pegging the price of Fragrances and Fragrance Ingredients.

d)    The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) price competition in the sale of Fragrances has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Fragrances sold by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non- competitive levels in the State of California and throughout the United States; and (3) those who purchased products containing Fragrances or Fragrance Ingredients have been deprived of the benefit of free and open competition.

e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Masees Skenderian and members of the Damages Class have been injured in their business and property in that they paid more for products containing Fragrances or Fragrance Ingredients than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff Masees Skenderian and members of the Damages Class seek treble damages and their cost of suit, including a

reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

196.    **Colorado:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Col. Rev. Stat. Ann. §§6-4-104, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Colorado by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Colorado at the time of their purchase.

a)    Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Colorado; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Col. Rev. Stat. Ann. §§6-4-104, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Col. Rev. Stat. Ann. §§6-4-104, et seq.

197.     **Connecticut**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Conn. Gen. Stat. Ann. §§ 35-26, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Connecticut by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Connecticut at the time of their purchases.

a)     Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout Connecticut; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Connecticut; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)     During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce.

c)     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Conn. Gen. Stat. Ann. §§ 35-26, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Conn. Gen. Stat. Ann. §§ 35-26, et seq.

198.     **District of Columbia**: Defendants have entered into an unlawful agreement in

restraint of trade in violation of D.C. Code Ann. §§ 28-4502, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in the District of Columbia by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in the District of Columbia at the time of their purchases .

    a)    Defendants' combination or conspiracy had the following effects:

        (1) Fragrance price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    b)    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

    c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4502, et seq. Accordingly, members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4502 et seq.

199.   **Hawaii:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Haw. Red. Stat. § 480-1, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Hawaii by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Hawaii at the time of their purchases .

    a)   Defendants' combination or conspiracy had the following effects:

       (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    b)   During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

    c)   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Haw. Code § 480-1, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Haw. Code § 480-1, et seq.

200.   **Illinois**: Defendants have entered into an unlawful agreement in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, et seq. with respect to purchases of Fragrances in

Illinois by members of the Damages Class and/or purchasers of Fragrances by members of the Damages Class who resided in Illinois at the time of their purchases.

      a)      Defendants' combination or conspiracy had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supracompetitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

      b)      During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

      c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

      d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Ill. Comp. Stat. Ann. 10/1, et seq. Accordingly, members of the Damages Class seek all forms of relief available under 740 Ill. Comp. Stat. Ann. 10/1, et seq.

201.    **Iowa**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §§ 553.4, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Iowa by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Iowa at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and
eliminated throughout Iowa; (2) Fragrance prices were raised, fixed,
maintained, and stabilized at artificially high levels throughout Iowa;
(3) members of the Damages Class were deprived of free and open
competition; and (4) members of the Damages Class paid supra-
competitive, artificially inflated prices for products containing
Fragrances or Fragrance Ingredients.

b)      During the Class Period, Defendants' illegal conduct substantially affected
Iowa commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of Iowa Code §§ 553.4, et seq. Accordingly,
members of the Damages Class seek all forms of relief available under
Iowa Code §§ 553.4, et seq.

202.   **Kansas**: Defendants have entered into an unlawful agreement in restraint of trade
in violation of Kan. Stat. Ann. §§ 50-101, et seq. with respect to purchases of products
containing Fragrances or Fragrance Ingredients in Kansas by members of the Damages Class
and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the
Damages Class who resided in California at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)     During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

c)     As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, et seq. Accordingly, members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, et seq.

203.    **Maine:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Ann. 10 §§ 1101, et seq. with respect to purchases of products containing Fragrances by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Maine at the time of their purchases.

a)     Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and

eliminated throughout Maine; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

a) During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

b) As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

c) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Me. Rev. Stat. Ann.10, §§ 1101, et seq. Accordingly, members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. 10, §§ 1101, et seq.

204.    **Michigan**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws Ann. §§ 445.772, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Michigan by Plaintiff Frank Novak and members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by Plaintiff Frank Novak and members of the Damages Class who resided in Michigan at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and

eliminated throughout Michigan; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiff Frank Novak and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff Frank Novak and members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

c)    As a direct and proximate result of Defendants' conduct, Plaintiff Frank Novak and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreement in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.772, et seq. Accordingly, Plaintiff Frank Novak and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.772, et seq.

205.    **Minnesota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. §§ 325D.51, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Minnesota by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Minnesota at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

-64-

        (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    b)    During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

    c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.51, et seq. Accordingly, members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.51, et seq.

206.    **Mississippi**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code Ann §§ 75-21-3, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Mississippi by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Mississippi at the time of their purchases.

    a)    Defendants' combination or conspiracy had the following effects:

        (1) Fragrance price competition was restrained, suppressed, and

eliminated throughout Mississippi; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)    During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have bene injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-3, et seq. Accordingly, members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75- 21-3, et seq.

207.    **Nebraska:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Code Ann. §§ 59-801, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Nebraska by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Nebraska at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Fragrance prices were raised,

fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)   During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

c)   As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, et seq. Accordingly, members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, et seq.

208.   **Nevada**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. §§ 598A.060, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Nevada by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Nevada at the time of their purchases.

a)   Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated through Nevada; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada;

(3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)    During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.060, et seq. Accordingly, members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.060, et seq.

209.   **New Hampshire**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.H. Rev. Stat. Ann. §§ 356.2, et seq., with respect to purchases of products containing Fragrances or Fragrance Ingredients in New Hampshire by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in New Hampshire at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially throughout New Hampshire, (3) members of the Damages Class were deprived of free

and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)      During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356.2, et seq. Accordingly, members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:2, et seq.

210.    **New Mexico**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.M. Stat. Ann. §§ 57-1-1, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in New Mexico by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in New Mexico at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially inflated prices for Fragrances.

b)      During the Class Period, Defendants' illegal conduct substantially affected

New Mexico commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of New Mexico Stat. Ann. S§ 57-1-1, et seq.
Accordingly, members of the Damages Class seek all relief available
under New Mexico Stat. Ann. §§ 57-1-1, et seq.

211.    **New York**: Defendants have entered into an unlawful agreement in restraint of
trade in violation of N.Y. Gen. Bus. L. §§ 340, et seq. with respect to purchases of products
containing Fragrances or Fragrance Ingredients in New York by Plaintiff Daniel Nabavian and
members of the Damages Class and/or purchases of products containing Fragrances or Fragrance
Ingredients by Plaintiff Daniel Nabavian and members of the Damages Class who resided in
New York at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and
eliminated throughout New York; (2) Fragrance prices were raised,
fixed, maintained, and stabilized at artificially high levels throughout
New York; (3) Plaintiff Daniel Nabavian and members of the Damages
Class were deprived of free and open competition; and (4) Plaintiff
Daniel Nabavian and members of the Damages Class paid supra-
competitive, artificially inflated prices for products containing
Fragrances or Fragrance Ingredients, or purchased products that were

otherwise of lower quality than they would have been absent the conspirators illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

b)   During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Daniel Nabavian and members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act §§ 340, et seq. The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiff Daniel Nabavian and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, et seq.

212.   **North Carolina**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.C. Gen. Stat. §§ 75-1, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in North Carolina by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in North Carolina at the time of their purchases.

a)   Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) members of the Damages Class were

deprived of free and open competition; and (4) members of the
Damages Class paid supra-competitive, artificially inflated prices for
products containing Fragrances and Fragrance Ingredients.

b)   During the Class Period, Defendants' illegal conduct substantially affected
North Carolina commerce.

c)   As a direct and proximate result of the Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

d)   By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, et seq.
Accordingly, members of the Damages Class seek all relief available
under North Carolina Gen. Stat. §§ 75-1, et seq.

213.   **North Dakota**: Defendants have entered into an unlawful agreement in restraint
of trade in violation of N.D. Cent. Code §§ 51-08.1-01, et seq. with respect to purchases of
products containing Fragrances or Fragrance Ingredients in North Dakota by members of the
Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by
members of the Damages Class who resided in North Dakota at the time of their purchases.

a)   Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and
eliminated throughout North Dakota; (2) Fragrance prices were raised,
fixed, maintained, and stabilized at artificially high levels throughout
North Dakota; (3) members of the Damages Class were deprived of
free and open competition; and (4) members of the Damages Class

-72-

paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b) During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

c) As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08/1-01, et seq. Accordingly, members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51- 08.1-01, et seq.205.

214. **Oregon**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. §§ 646.705, et seq., with respect to purchases of products containing Fragrances or Fragrance Ingredients in Oregon by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Oregon at the time of their purchases.

a) Defendants' combination and conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing

-73-

Fragrances or Fragrance Ingredients.

b)      During the Class Period, Defendants' illegal conduct had a substantial

effect on Oregon commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Oregon Revised Statutes §§ 646.705, et

seq. Accordingly, members of the Damages Class seek all relief available

under Oregon Revised Statutes §§ 646.705, et seq.

215.    **Rhode Island**: Defendants have entered into an unlawful agreement in restraint of

trade in violation of R.I. Gen. Laws §§ 6-36-4, et seq. with respect to purchases of products

containing Fragrances or Fragrance Ingredients in Rhode Island by members of the Damages

Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members

of the Damages Class who resided in Rhode Island at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrance price competition was restrained, suppressed, and

eliminated throughout Rhode Island; (2) Fragrance prices were raised,

fixed, maintained, and stabilized at artificially high levels throughout

Rhode Island; (3) members of the Damages Class were deprived of

free and open competition; and (4) members of the Damages Class

paid supra-competitive, artificially inflated prices for products

containing Fragrances or Fragrance Ingredients.

    b)      During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce.

    c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of R.I. Gen. Laws §§ 6- 36-4, et seq. Accordingly, members of the Damages Class seek all forms of relief available under R.I. Gen. Laws §§ 6-13.1-1, et seq.

216.    **South Dakota**: Defendants have entered into an unlawful agreement in restraint of trade in violation of S.D. Codified Laws An. §§ 37-1, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in South Dakota by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in South Dakota at the time of their purchases.

    a)      Defendants' combination or conspiracy had the following effects:

        (1) Fragrance price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Fragrance prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    b)      During the Class Period, Defendants' illegal conduct had a substantial

effect on South Dakota commerce.

c)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws An. §§ 37-1, et seq. Accordingly, members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, et seq.

217.   **Tennessee**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. §§ 47-25-101, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Tennessee by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Tennessee at the time of their purchases.

a)      Defendants' combination or conspiracy had the following effects:

(1) Fragrances price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

c) As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, et seq. Accordingly, members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, et seq.

218.  **Utah**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Ann. §§ 76-10-3101, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Utah by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Utah at the time of their purchases.

a) Defendants' combination or conspiracy had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Utah; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b) During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

c) As a direct and proximate cause of the Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, et seq. Accordingly, members of the Damages Class seek all relief available under Utah Code Ann. §§ 76-10-3101, et seq.

219.    **Vermont**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Vt. Stat. Ann. 9 §§ 2453, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Vermont at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Fragrances price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

c)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and

property and are threatened with further injury.

d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, et seq. Accordingly, members of the Damages Class seek all relief available under Vermont Stat. Ann. §§ 2453, et seq.

220.    **West Virginia**: Defendants have entered into an unlawful agreement in restraint of trade in violation of W. Va. Code §§ 47-18-4, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in West Virginia by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in West Virginia at the time of their purchases.

a)    Defendants' combination or conspiracy had the following effects:

(1) Fragrances price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

b)    During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

c)    As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, et seq. Accordingly, members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, et seq.

221.    **Wisconsin**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. §§ 133.01, et seq. with respect to purchases of products containing Fragrances or Fragrance Ingredients in Wisconsin by members of the Damages Class and/or purchases of products containing Fragrances or Fragrance Ingredients by members of the Damages Class who resided in Wisconsin at the time of their purchases.

    a)      Defendants' combination or conspiracy had the following effects:

        (1) Fragrances price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Fragrances prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

    c)      As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

    d)      By reason of the foregoing, Defendants have entered into agreements in

restraint of trade in violation of Wisconsin Stat. §§ 133.01, et seq.

Accordingly, members of the Damages Class seek all relief available

under Wisconsin Stat. §§ 133.01, et seq.

### COUNT 3: VIOLATION OF STATE CONSUMER PROTECTION LAW
#### (On Behalf of Plaintiffs and the Damages Class)

222.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

223.    During the Class Period, Defendants engaged in unfair or deceptive acts or

practices in violation of the state deceptive trade practices and consumer protection laws pleaded

below.

224.    **Arkansas**: Defendants have engaged in unfair or deceptive acts or practices in

violation of Ark. Code Ann. § 4-88-101, et seq.

     a)    Defendants knowingly agreed to, and did in fact, act in restraint of trade or

commerce by affecting, fixing, raising, controlling, maintaining, and/or

stabilizing at non-competitive and artificially inflated levels, the prices at

which Fragrances were sold, distributed, or obtained in Arkansas and took

efforts to conceal their agreements from members of the Damages Class.

     b)    The aforementioned conduct on the part of Defendants constituted

"unconscionable" and "deceptive" acts or practices in violation of

Arkansas Code Annotated, § 4-88- 107(a)(10).

     c)    Defendants' unlawful conduct had the following effects: (1) Fragrance

price competition was restrained, suppressed, and eliminated throughout

Arkansas; (2) Fragrance prices were raised, fixed, maintained, and

stabilized at artificially high levels throughout Arkansas; (3) members of

the Damages Class were deprived of free and open competition; (4)

-81-

members of the Damages Class paid supra-competitive, artificially

inflated prices for products containing Fragrances and Fragrance

Ingredients.

d)     During the Class Period, Defendants' illegal conduct had a substantial

effect on Arkansas commerce.

e)     As a direct and proximate cause of the Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and

property and are threatened with further injury.

f)     By reason of the foregoing, Defendants have engaged in unfair or

deceptive acts of practices in violation of Ark. Code Ann. § 4-88-

107(a)(10). Accordingly, members of the Damages Class seek all relief

available under Ark. Code Ann. § 4-88-107(a)(10).

225.    **California**: Defendants have engaged in unfair or deceptive acts or practices in

violation of Cal. Bus. & Prof. Code § 17200, et seq.

a)     Defendants knowingly agreed to, and did in fact, act in restraint of trade or

commerce by affecting, fixing, raising, controlling, maintaining, and/or

stabilizing at non-competitive and artificially inflated levels, the prices at

which Fragrances were sold, distributed, or obtained in California and

exercised their collective control to suppress innovation and consumer

choice.

b)     Defendants took efforts to conceal their agreements from members of the

Damages Class.

c)     The claim is instituted pursuant to Sections 17203 and 17204 of the

California Business and Professions Code, to obtain restitution form these Defendants for acts as alleged herein that violated Section 17200 of the California Business and Professional Code, commonly known as the Unfair Competition Law (the "UCL").

d)      Defendants conduct as alleged herein violates the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business accts or practices within the meaning of UCL, including, but not limited to, the following: the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, et seq., of the California Business and Professions Code, set forth above.

e)      Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, et seq., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

f)      Defendants' acts or practices are unfair to consumers of products containing Fragrances or Fragrance Ingredients in California within the meaning of Section 17200, California Business and Professions Code.

g)      Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions

Code.

h)      During the Class Period, Defendants' illegal conduct had a substantial effect on California commerce.

i)      The illegal conduct alleged herein is continuing and there is  no indication that Defendants will not continue such activity into the future.

j)      As a direct and proximate cause of the Defendants' unlawful and unfair business practices, members of the Damages Class have and continue to pay supra-competition and artificially-inflated prices for products containing Fragrances. Members of the Damages Class have been injured in their business and property and are threatened with further injury as a result of such unfair competition.

k)      As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' u Cal. Bus. & Prof. Code § 17200, et seq.

226.   **District of Columbia**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, et seq.

a)      Members of the Damages class purchased products containing Fragrances or Fragrance ingredients in the District Columbia or resided in the District of Columbia when they purchased products containing Fragrances or Fragrance Ingredients for personal, family, or household purposes.

b)      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or

non-competitive levels, the prices at which Fragrances were sold, distributed or obtained in the District of Columbia.

c)      The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Members of the Damages class were not aware of Defendants' price-fixing conspiracy and were therefore unaware of the unfair and illegal overcharges. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers and a gross disparity between the price paid and the value received for products containing Fragrances or Fragrance Ingredients.

d)      Defendants unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) members of the Damages class were deprived of free and open competition; and (4) members of the Damages class paid supra-competitive, artificially inflated prices for products containing Fragrances and Fragrance Ingredients.

e)      As a direct and proximate result of Defendants' unlawful conduct, members of the Damages class were injured and are threatened with further injury. Accordingly, members of the Damages class seek all relief available under District of Columbia Code § 28-3901, et seq.

227.   **Florida**: Defendants have engaged in unfair, unconscionable or deceptive acts or

practices in violation of Fla. Stat. § 501.201(1).

a)     Defendants agreed to and did in fact, act in restraint of trade or commerce by affecting, fixing, raising, maintaining, controlling, and /or stabilizing the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b)     Defendants concealed, suppressed, and omitted to disclose material facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Fragrances. The concealed, suppressed, and omitted facts would have been important to members of the Damages class as they related to the products containing Fragrances or Fragrance Ingredients that they purchased.

c)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Fragrances by making public statements that were not in accord with the facts.

d)     Defendants' statement and conduct concerning the price of Fragrances were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchases of products containing Fragrances or Fragrance Ingredients with prices established by a free and fair market.

e)     Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Florida; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) members of the Damages

Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

f)  During the Class Period, Defendants' illegal conduct had a substantial effect on Florida commerce and consumers.

g)  As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

h)  By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Fla. Stat. § 501.201(1), et seq. Accordingly, members of the Damages Class seek all relief available under Fla. Stat. § 501.201(1), et seq.

228.  **Hawaii**: Defendants have engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Hawaii Rev. Stat. § 480-2. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which products containing Fragrances or Fragrance Ingredients were sold, distributed or obtained in Hawaii.

a)  Members of the Damages Class purchased products containing Fragrances or Fragrance Ingredients in Hawaii and/or purchased products containing Fragrances or Fragrance Ingredients while residing in Hawaii at the time of their purchases.

b)  Defendants' unlawful conduct had the following effects: (1)Fragrance

price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

c) During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

d) As a direct and proximate result of Defendants' unlawful conduct, and members of the Damages Class were injured and are threatened with further injury. Accordingly, members of the Damages Class seek all relief available under the statute.

229. **Illinois**: Defendants have engaged in unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. Ann. 505/10a, et seq.

a) Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b) During the Class Period, Defendants' illegal conduct had a substantial effect on Illinois commerce.

c) As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d) By reason of the foregoing, Defendants have engaged om unfair or

deceptive acts of practices in violation of 815 Ill. Comp. Stat. Ann. 505/10a, et seq. Accordingly, members of the Damages Class seek all relief available under 815 Ill. Comp. Stat. Ann. 505/10a, et seq.

230.    **Massachusetts**: Defendants have engaged in unfair or deceptive acts or practices in violation of 81 Massachusetts G.L. c. 93A, §2, et seq.

a)    Defendants were engaged in trade or commerce as defined in G.L. c. 93A.

b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, raising, maintaining, controlling and/or stabilizing the price of Fragrances at artificial and non-competitive levels, the prices at which Fragrances were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from members of the Damages Class.

c)    Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

d)    During the Class Period, Defendants' illegal conduct had a substantial effect on Massachusetts commerce and consumers.

e)    As a direct and proximate cause of the Defendants' unlawful conduct,

members of the Damages Class have been injured in their business and property and are threatened with further injury.

f)      Certain of Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, §9, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

g)      Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling members of the Damages Class to multiple damages.

231.    **Minnesota**: Defendants have engaged in unfair, unconscionable, or deceptive acts or practices in violation of Minn. Stat. § 325F.68, et seq.

a)      Defendants engaged in the conduct described in this Complaint in connection with the sale of Fragrances in trade or commerce in a market that includes Minnesota.

b)      Defendants agreed to, and did in fact, affect, fix, raise, maintain, control, maintain and/or stabilize the price of Fragrances at artificial and non-competitive levels, and exercised their collective control to suppress innovation and consumer choice. Such conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to members of the Damages Class.

c)      Defendants misrepresented the real cause of price increases and/or the

absence of price reductions in Fragrances by making public statements that were not in accord with the facts.

d)   Defendants' statements and conduct concerning the price of Fragrances were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing products containing Fragrances at prices established by a free and fair market.

e)   Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

f)   During the Class Period, Defendants' illegal conduct had a substantial effect on Minnesota commerce.

g)   As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class suffered ascertainable loss of money or property.

h)   By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Minn. Stat. § 325F.68, et seq. Accordingly, members of the Damages Class seek all relief available under Minn. Stat. § 325F.68, et seq.

232.    **Montana**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, et seq.

    a)    Members of the Damages Class purchased products containing Fragrances or Fragrance Ingredients in Montana for personal, family, or household purposes, or resided in Montana when they purchased products containing Fragrances or Fragrance Ingredients in Montana for personal, family, or household purposes.

    b)    Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Montana; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    c)    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

    d)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class were injured and are threatened with further injury. Accordingly, members of the Damages Class seek all relief available under the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, et seq.

233.     **Nebraska**: Defendants have engaged in unfair methods competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq.

    a)    Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

    b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

    c)    As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class were injured and are threatened with further injury. Accordingly, members of the Damages Class seek all relief available under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq.

234.     **Nevada:** Defendants have engaged in deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598.0903, et seq.

    a)    Defendants engaged in the conduct described herein in connection with the sale of Fragrances in trade or commerce in a market that includes Nevada.

b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Fragrances were sold, distributed or obtained in Nevada, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to  members of the Damages Class.

c)    Defendants concealed, suppressed, and omitted to disclose material facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Fragrances. The concealed, suppressed, and omitted facts would have been important to members of the Damages Class as they related to the cost of products containing Fragrances or Fragrance Ingredients that they purchased.

d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Fragrances by making public statements that were not in accord with the facts.

e)    Defendants' statements and conduct concerning the price of Fragrances were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing products containing Fragrances or Fragrance Ingredients at prices established by a free and fair market.

f)    Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout

Nevada; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for Fragrances. As a direct and proximate result of the above-described unlawful practices, members of the Damages Class suffered ascertainable loss of money or property. Accordingly, members of the Damages Class seek all relief available under Nev. Rev. Stat. § 598.0993.

235.   **New Mexico**: Defendants have engaged in unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-3, et seq.

   a)   Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

   b)   During the Class Period, Defendants' illegal conduct had a substantial effect on New Mexico commerce.

   c)   As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

   d)   By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of N.M. Stat. Ann. § 57-12- 3, et seq. Accordingly, members of the Damages Class seek all relief available under N.M. Stat. Ann. § 57-12-3, et seq.

236.   **New York**: Defendants have engaged in unfair competition or unfair,

unconscionable, or deceptive acts or practices in violation of New York Gen. Bus. Law § 349, et seq.

a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Fragrances were sold, distributed or obtained in New York and took efforts to conceal their agreements from members of the Damages Class.

b)     Defendants and their co-conspirators made public statements about the prices of Fragrances and products containing Fragrances that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Fragrances and products containing Fragrances; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

c)     Because of Defendants' unlawful trade practices in New York, members of the Damages Class who purchased products containing Fragrances or Fragrances Ingredients were misled to believe that they were paying a fair price for products containing Fragrances or the price increases for Fragrances were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

d)     Defendants knew that their unlawful trade practices with respect to pricing Fragrances would have an impact on New York consumers and not just

Defendants' direct customers.

e)  Defendants knew that their unlawful trade practices with respect to pricing Fragrances would have a broad impact, causing customers who purchased products containing Fragrances or Fragrance Ingredients to be injured by paying more for products containing Fragrances or Fragrance Ingredients than they would have paid in the absence of Defendants' unlawful trade acts and practices.

f)  The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

g)  Defendants' unlawful conduct had the following effects: (1) Fragrance competition was restrained, suppressed, and eliminated throughout New York; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

h)  During the Class Period, Defendants marketed, sold, or distributed Fragrances in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

i)   Members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

237.   **North Carolina**: Defendants have engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.

a)   Defendants agreed to, and did in fact, act in restraint of trade or commerce by fixing, raising, maintaining, and/or stabilizing the price of Fragrances at artificial and non-competitive levels and took efforts to conceal their agreements from members of the Damages Class.

b)   Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which members of the Damages Class could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of Fragrances created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy.

c)   The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an

honest marketplace in which economic activity is conducted in a
competitive manner.

d)      Defendants' unlawful conduct had the following effects: (1) Fragrance
price competition was restrained, suppressed, and eliminated throughout
North Carolina; (2) Fragrance prices were raised, fixed, maintained, and
stabilized at artificially high levels throughout North Carolina; (3)
members of the Damages Class were deprived of free and open
competition; and (4) members of the Damages Class paid supra-
competitive, artificially inflated prices for products containing Fragrances
or Fragrance Ingredients.

e)      During the Class Period, Defendants' illegal conduct had a substantial
effect on North Carolina commerce and consumers.

f)      As a direct and proximate cause of the Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

g)      By reason of the foregoing, Defendants have engaged om unfair or
deceptive acts of practices in violation of N.C. Gen. Stat. § 75-1.1, et seq.
Accordingly, members of the Damages Class seek all relief available
under N.C. Gen. Stat. § 75-1.1, et seq.

238.    **North Dakota**: Defendants have engaged in unfair competition or unfair,
unconscionable, or deceptive acts or practices in violation of the North Dakota Unfair Trade
Practices Law, N.D. Cent. Code § 51-10, et seq.

a)      Defendants engaged in the conduct described in this Complaint in

connection with the sale of Fragrances in trade or commerce in a market that includes North Dakota.

b)      Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Fragrances were sold, distributed, or obtained in North Dakota, which conduct constituted a fraudulent or deceptive act or practice and caused substantial injury to members of the Damages Class.

c)      Defendants concealed, suppressed, and omitted to disclose materials facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Fragrances. The concealed, suppressed, and omitted facts would have been important to members of the Damages Class as they related to the cost of products containing Fragrances or Fragrance Ingredients that they purchased.

d)      Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Fragrances by making public statements that were not in accord with the facts.

e)      Defendants' statements and conduct concerning the price of Fragrances were deceptive as they had the tendency or capacity to mislead members of the Damages Class to believe that they were purchasing products containing Fragrances and Fragrance Ingredients at prices established by a free and fair market.

f)      Defendants' unlawful conduct had the following effects: (1) Fragrances price competition was restrained, suppressed, and eliminated throughout

North Dakota; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

g) As a direct and proximate result of the above-described unlawful practices, members of the Damages Class suffered ascertainable loss of money or property. Accordingly,  members of the Damages Class seek all relief available under N.D. Cent. Code § 51-10-06.

239.    **Rhode Island**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.

a) Members of the Damages Class purchased products containing Fragrances or Fragrance Ingredients for personal, family, or household purposes.

b) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Fragrances were sold, distributed, or obtained in Rhode Island.

c) Defendants deliberately failed to disclose material facts to members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Fragrances. Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average,

non-business consumer, Defendants breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that Defendants' prices for Fragrances were competitive and fair.

d) Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) members of the Fragrance Class were deprived of free and open competition; and (4) members of the Fragrance Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

e) As a direct and proximate result of Defendants' violations of law, members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

f) Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Fragrances, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing products containing Fragrances at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to members of the Damages Class as they related to the cost of products containing Fragrances or Fragrance

Ingredients that they purchased.

g)      Accordingly, members of the Damages class seek all relief available under the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.

240.   **South Carolina**: Defendants have engaged in unfair or deceptive acts or practices in violation of S.C. Code Ann. § 39-5-10, et seq.

a)      Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b)      Defendants' combinations or conspiracies had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Carolina; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances or Fragrance Ingredients.

c)      During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

d)      As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

e)      By reason of the foregoing, Defendants have engaged om unfair or

deceptive acts of practices in violation of S.C. Code Ann. § 39-5-10, et seq. Accordingly, members of the Damages Class seek all relief available under S.C. Code Ann. § 39-5-10, et seq.

241.    **Vermont**: Defendants have engaged in unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, § 2453, et seq.

  a)   Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances at artificial and non-competitive levels and exercised their collective control to suppress innovation and consumer choice.

  b)   Defendants deliberately failed to disclose material facts to members of the Damages Class concerning their unlawful activities and artificially inflated prices for Fragrances. Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their prices for Fragrances were competitive and fair,

  c)   Defendants' unlawful conduct had the following effects: (1) Fragrance price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Fragrance prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) members of the Damages Class were deprived of free and open competition; and (4) members of the Damages Class paid supra-competitive, artificially inflated prices for products containing Fragrances and Fragrance Ingredients.

d)      As a direct and proximate result of Defendants' violations of law,
members of the Damages Class suffered an ascertainable loss of money or
property as a result of Defendants' use or employment of unconscionable
and deceptive commercial practices as set forth above. That loss was
caused by Defendants' willful and deceptive conduct, as described herein.

e)      During the Class Period, Defendants' illegal conduct had a substantial
effect on Vermont commerce.

f)      Defendants' deception, including their omissions concerning the price of
Fragrances, likely misled all purchasers acting reasonably under the
circumstances to believe that they were purchasing products containing
Fragrances at prices born by a free and fair market. Defendants'
misleading conduct and unconscionable activities constitutes unfair
competition or unfair or deceptive acts or practices in violation of 9
Vermont § 2451, et seq.

g)      As a direct and proximate cause of the Defendants' unlawful conduct,
members of the Damages Class have been injured in their business and
property and are threatened with further injury.

h)      By reason of the foregoing, Defendants have engaged om unfair or
deceptive acts of practices in violation of Vt. Stat. Ann. Tit. 9, § 2453, et
seq. Accordingly, members of the Damages Class seek all relief available
Vt. Stat. Ann. Tit. 9, § 2453, et seq.

242.    **Wisconsin**: Defendants have engaged in unfair or deceptive acts or practices in
violation of Wisc. Stat. § 100.18, et seq.

a) Defendants worked together to fix, raise, maintain, and stabilize the price of Fragrances and exercised their collective control to suppress innovation and consumer choice.

b) During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

c) As a direct and proximate cause of the Defendants' unlawful conduct, members of the Damages Class have been injured in their business and property and are threatened with further injury.

d) By reason of the foregoing, Defendants have engaged om unfair or deceptive acts of practices in violation of Wisc. Stat. § 100.18, et seq. Accordingly, members of the Damages Class seek all relief available Wisc. Stat. § 100.18, et seq.

## COUNT 4: UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Damages Class)

243. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

244. To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

245. As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Fragrances and Fragrance Ingredients.

246. Defendants have benefitted from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the Class Members for products containing Fragrances and

Fragrance Ingredients.

247.     Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill- gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

248.     Pursuit of any remedies against the firms from whom Plaintiffs and the members of the Damages Class purchased products containing Fragrances or Fragrance Ingredients subject to Defendants' conspiracy would have been futile, given that those firms did not take part in Defendants' conspiracy.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes of all others similarly situated, respectfully request that the Court grant judgment against Defendants as follows:

249.     The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

250.     That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

> a) An unlawful combination, trust, agreement, understanding, and/or concert of action and an unreasonable restraint of trade or commerce in violation of the federal antitrust laws and state antitrust, unfair competition and consumer protection laws as set forth herein; and
>
> b) Acts of unjust enrichment by Defendants as set forth herein.

251.    Plaintiffs and members of the Damages Class recover damages to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

252.    Plaintiffs and members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

253.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

254.    Plaintiffs and members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment.

255.    Plaintiffs and members of the Damages Class be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

256.    Plaintiffs and Members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

257.    Plaintiffs and Members of the Classes have such other and further relief as the

case may require and the Court may deem just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of all issues so triable.

Dated:  October 18, 2023              Respectfully submitted,

*/s/ William G. Caldes*
William G. Caldes (SBN 00062-1995)
Diana J. Zinser (*Pro Hac Vice forthcoming*)
Cary Zhang (SBN 37948-2021)
SPECTOR ROSEMAN & KODROFF, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA  19103
Telephone: (215) 496-0300
Facsimile:  (215) 496-6611
bcaldes@srkattorneys.com
dzinser@srkattorneys.com
czhang@srkattorneys.com

Justin S. Nematzadeh (*Pro Hac Vice forthcoming*)
NEMATZADEH PLLC
101 Avenue of the Americas, Suite 909
New York, NY  10013
Telephone: (646) 799-6729
jsn@nematlawyers.com

*Attorneys for Plaintiffs and Proposed Classes*